THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JIMMY BULLARD, Defendant-Appellant.

Second District    No. 76-251

Opinion filed September 23, 1977.

Ralph Ruebner and Mark Schuster, both of State Appellate Defender's Office, of Elgin, for appellant.

Gerry Dondanville, State's Attorney, of Geneva (Phyllis J. Perko and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE NASH delivered the opinion of the court:

On January 8, 1973, defendant, Jimmy Bullard, pleaded guilty to the offense of robbery (Ill. Rev. Stat. 1971, ch. 38, par. 18—1) and was sentenced to a term of three years probation conditioned upon the payment of restitution, court costs and a probation fee in the total amount of $352.40. On February 20, 1976, after a hearing, defendant's probation was revoked and he was sentenced to a term of not less than five years nor

more than 15 years in the penitentiary for his original robbery offense.

The revocation of defendant's probation was based upon the trial court's findings that he had violated the conditions of his probation by failing to make the required payments and by committing a robbery on November 9, 1975. Defendant brings this appeal from the trial court's order revoking his probation, contending: (1) that the State failed to prove that his failure to make restitution was wilful; (2) that the State failed to prove by a preponderance of the evidence that defendant committed the alleged robbery; and (3) that questions and comments of the trial judge suggested bias against defendant and his witnesses at the revocation hearing. For the reasons discussed below we find merit in defendant's first and third assignments of error which requires reversal of the trial court's findings that defendant violated conditions of his probation by failing to make the required payments and by committing the alleged robbery.

Defendant's first contention is that the State failed to prove that his failure to comply with the financial obligation imposed upon him as a condition of his probation was wilful.

At the hearing on the State's petition to revoke defendant's probation the State's evidence consisted solely of the testimony of the bookkeeper for the Adult Probation Department that defendant still owed $142.40, that his most recent payment was $100 on January 8, 1976, and that the most recent payment prior to that was $10 on May 7, 1974. The bookkeeper testified she had no personal knowledge of defendant's financial circumstances.

Defendant testified that over the 36-month period of this probation, from February 1973 to February 1976, he had not worked regularly, he had drawn only two unemployment checks and he had spent part of 1974 in a government-sponsored program learning to become a welder. Defendant further testified that he had been trying to pay this obligation yet could not then afford to pay even $10 per month. Based on this testimony the trial court found that defendant, having failed to make the payments required of him as a condition of probation, was in violation and the sentence of probation would be vacated.

At the sentencing hearing held on March 5, 1976, defendant presented a motion requesting a new revocation hearing arguing, in part, that a specific finding that nonpayment of financial obligations imposed as a condition of probation was wilful was required to sustain a petition to revoke probation. (Defendant also informed the court that he had borrowed money and paid the remaining balance of $142.40 since the earlier hearing.) This motion was denied by the trial court.

During the sentencing hearing defendant testified that he had been employed from July 1975 to December 1975 as a welder earning

approximately $95 per week. He also testified that during that time he spent his earnings on hospital bills, rent, child support and a used car which he purchased to use in traveling to and from work.

Section 5—6—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—4) sets forth the procedure for a hearing of a petition charging a violation of a condition of probation:

> "(b) The court shall conduct a hearing of the alleged violation. * * * .
>
> (c) The State has the burden of going forward with the evidence and proving the violation by the preponderance of the evidence. * * *
>
> (d) Probation * * * shall not be revoked for failure to comply with conditions of a sentence which imposes financial obligations upon the offender unless such failure is due to his wilful refusal to pay."

Our supreme court has made it clear that under the Unified Code of Corrections it is incumbent on the State to prove that a defendant's failure to comply with financial conditions of a sentence of probation was a wilful refusal to pay before probation can be revoked for such failure to comply. *People v. Harder* (1975), 59 Ill. 2d 563, 322 N.E.2d 470; *People v. Boucher* (1974), 57 Ill. 2d 225, 311 N.E.2d 679.

In *Boucher* the supreme court stated that the trial court had made no finding of a wilful refusal to pay, that it could not determine from the record the character of defendant's noncompliance with the restitutional condition of his probation and, therefore, vacated the judgment of the appellate court and remanded the cause to the circuit court for further proceedings. In *Harder* the court stated that the trial court had made no finding of a wilful refusal to pay, that there was nothing in the record which would have supported such a finding in any event, and reversed the judgment of the circuit and appellate courts finding it unnecessary to remand as in *Boucher*.

■■ In the instant case the trial court did not find that defendant's failure to make the required payments was a wilful refusal to pay. The evidence presented by the State showed only that defendant failed to make all of the payments ordered and still owed $142.40. Defendant testified that he could not afford to make his payments, although he had tried, due to unemployment and time spent learning a trade. On this evidence the State did not establish a wilful refusal to pay on the part of the defendant. Even should we consider the evidence introduced at the sentencing hearing that defendant earned $95 a week for five months during 1975, the evidence of his necessary expenses indicates a difficult financial situation precluding the probation ordered payment during the time in question.

We find that the order revoking defendant's probation on this ground was erroneous in the absence of a finding that he wilfully refused to make the required payments, and, we have further determined that such a finding could not be properly reached on the evidence presented here. The trial court's order revoking probation on this ground will be reversed without being remanded.

Defendant's second contention is that the State failed to prove by a preponderance of the evidence that he violated the conditions of his probation by committing the alleged robbery.

The testimony at the hearing on the robbery issue was that at about 3:30 p.m. on the day of the robbery defendant spoke with two black women who testified that defendant asked them in a kidding manner to help him rob the victim, Albert "Shorty" Ball, but they declined. Defendant testified that it was the two women who asked him to help them rob Ball, but that he declined. Defendant testified that after this conversation he and a friend drove around in the friend's car until 7 p.m. and the friend corroborated this testimony. The two women also testified that shortly after speaking with defendant they spoke with Ball informing him that defendant had kidded around about robbing him but that he, Ball, should really watch out for three black men who had been following him in a car.

A police officer testified that the robbery in question took place at about 6:20 p.m. Ball testified that he was called out of a friend's house when a man came to the door and stated to another occupant of the house that a woman was waiting outside to see him. The victim testified he went outside alone and was attacked from behind and robbed of his wallet. He testified that his first view of the robber was from behind him as the robber left the scene, about 30 feet away in the dark, and that that was the best view he had. Ball testified he later identified defendant from some photographs as his assailant, and while he could not be sure the robber was defendant, it looked like him. The police officer testified that the person who had answered the door at the victim's friend's house had identified the person who came to the door from some photographs as being one of the three men in the car referred to by the two women and not the defendant.

Defendant testified that after he and his friend stopped driving around at 7 p.m., he borrowed the friend's car and drove to the home of three white women. There he met the three black men who had been identified as being in the car that was following Ball. One of the women testified that she had gone for a ride with one of these three men shortly after they had arrived at her home about 7 p.m., and that during the trip he had stopped to throw a wallet down a sewer. One of the other women testified that defendant and the three other men had stopped to eat that evening at the restaurant where she was working and that one of them,

not the defendant, mentioned something to her about having ripped off Ball.

■■ In a proceeding to revoke probation the State must prove the allegations of the revocation petition by a preponderance of the evidence. (*People v. Halterman* (1977), 45 Ill. App. 3d 605, 359 N.E.2d 1223; Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—4(c).) On the record before us we believe that the question of whether defendant was proved to have committed this robbery by a preponderance of the evidence is a close one. From the testimony introduced at the hearing it is difficult to discern whether it was actually defendant or the three men in the car following Ball who committed the robbery.

In this regard, our supreme court has stated that

"* * * the finding of a violation of probation will not be disturbed simply because of a conflict in evidence. The trial judge who heard the evidence was in a better position to weigh the testimony of the witnesses than is a reviewing court, and we will substitute our judgment for that of the trial court only when the testimony is contrary to the manifest weight of the evidence and not where the evidence is merely conflicting. [Citation.]" (*People v. Crowell* (1973), 53 Ill. 2d 447, 451-52, 292 N.E.2d 721, 723.)

We find the trial court's decision is not contrary to the manifest weight of the evidence and a reversal on this issue would not be justified.

The closeness of the evidence on the robbery issue is important, however, to consideration of defendant's third assignment of error, that the questions and comments of the trial judge suggested bias against defendant and his witnesses.

After each defense witness had been questioned by the assistant State's Attorney and defense counsel, the court also questioned them. The three white women, whose home defendant had visited on the night of the robbery, were examined by the court regarding their employment, education, drinking and drug use habits, resort to public aid, and associations with "colored men." Defendant, a black man, was questioned by the court regarding his association with white women. Defendant's friend, whom defendant said he had driven around with on the night of the robbery, was questioned by the court as to whether he had served in the armed forces. The court characterized some of defendant's witnesses as "hippie-dippies."

In the review of a probation revocation, as in the review of a conviction, the assessment of the credibility of witnesses is a matter within the proper discretion of the trial court judge. (*People v. Davis* (1976), 36 Ill. App. 3d 904, 906, 344 N.E.2d 736, 738.) When a trial judge questions the witnesses to aid in this assessment it has been held that he

"* * * has the right to question witnesses in order to elicit the truth

or to bring enlightenment on material issues which seem obscure. The propriety of such examination rests largely in the discretion of the trial court, and this is especially true where the cause is tried without a jury and the danger of prejudice lessened. People v. Palmer, 27 Ill. 2d 311, 314-15, 189 N.E.2d 265 (1963)." (*People v. McGrew* (1968), 102 Ill. App. 2d 275, 282, 243 N.E.2d 540, 544.) After setting out these same principles, the court in *People v. Cofield* (1973), 9 Ill. App. 3d 1048, 1051, 293 N.E.2d 692, 694, stated:

"However, the discretion of the trial judge is not unlimited. The standard of judicial conduct requires a judge to be fair and impartial whether the defendant has a jury trial or a bench trial. [Citations.]"

■■ We believe these principles apply equally to a probation revocation hearing as well as a trial and that on the record before us the trial judge abused his discretion by exceeding the grounds of judicial propriety in his questioning of the witnesses on issues which were not material, in context, to the issues before the court. While we might find such error to be harmless and nonprejudicial in a proper case we do not believe we may do so here. The evidence relating to the offense of robbery was closely balanced in this case and the trial judge's inappropriate concern with the life styles and associations of defendant and his witnesses might have caused him to improperly evaluate their credibility as witnesses and the weight to be given to their testimony. On that basis the determination that defendant violated the conditions of his probation by committing the alleged robbery must be reversed.

Therefore, the trial court's revocation of defendant's probation, insofar as it was based on the finding that defendant committed a robbery, is also reversed. On this issue, however, the cause will be remanded to the trial court for a new hearing.

Reversed and remanded.

BOYLE and SEIDENFELD, JJ., concur.