THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALFRED MOATON, Defendant-Appellant.

First District (2nd Division)   No. 1—87—2861

Opinion filed April 11, 1989.

Randolph N. Stone, Public Defender, of Chicago (John Kennedy and Karen E. Tietz, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Carol L. Gaines, and Edward Pacer, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

On June 15, 1987, defendant pleaded guilty to two counts of forgery and was sentenced to 30 months' probation. Approximately five weeks later, *i.e.*, on July 24, 1987, the People petitioned to have defendant's probation revoked, charging that defendant had violated all three conditions thereof. A hearing was held on July 29, 1987, after which the court found defendant guilty as charged and sentenced him to five years in the custody of the Illinois Department of Corrections. Defendant now appeals and raises the following issues: (1) whether it was an abuse of discretion for the court to terminate his probation, and (2) whether he is entitled to 39 days time served on probation to be credited against his sentence for imprisonment.

The terms of defendant's probation were as follows. He was to meet with probation officer McCann five times each week; more specifically, he was to meet with McCann twice weekly at McCann's office, two nights per week at defendant's home for a curfew check, and once a week at a community service site. His curfew required defendant to be at home between the hours of 7 p.m. and 7 a.m. Until the community service began, defendant was to make that meeting at McCann's office. Defendant was also required to make certain restitution payments beginning in June of 1987.

According to the record, defendant failed to appear for the requisite meetings on June 22, June 25, June 29, July 2, July 6, July 8, July 10, July 13, July 16, July 17, and July 20. In addition, the record discloses that defendant was frequently not in when McCann attempted home visits; the officer found defendant to be absent on June 22, June 30, July 1, July 4, July 12, July 13, July 17, July 22, and July 23. During the home visits of July 12 and July 22, defendant was on the premises surrounding the home, but outside of the house, which is considered to be a probation violation. On June 30, McCann telephoned defendant's residence and was informed by defendant's godfather that defendant was not at home. Defendant also failed to make any restitution payments.

On June 22, 1987, McCann telephoned defendant, and in that conversation, defendant informed the officer that he was having difficulty getting to the probation office. Other than on this one instance, initiated by McCann, defendant never bothered to explain to the officer why he had missed his visits.

Defendant admitted that he reported to the probation office only three times, claiming that the reason for his failure to meet the requirement was that he did not have the money to make the trip. Defendant was unemployed and not yet on public aid; he lived with his godfather and helped in his godfather's ice-cream business. The probation office was located at 2659 South California Avenue in Chicago; defendant resided at 15803 Paulina Avenue in Harvey. Thus, defendant was required to take some form of public transportation in order to attend the meetings.

Defendant testified that he was never told that in order to comply with the curfew requirement he had to remain inside his home. He further stated that he had an unfriendly relationship with his godfather's girlfriend, and that because of this animosity, she lied to McCann when she told him that defendant was at "the store" at the time of his July 13, 1987, curfew check. Defendant also stated that he was at home on each day that his probation officer came by. In addition, defendant informed the court that while he previously was unable to make restitution payments, his pubic aid payments had commenced and he would now be able to begin to make those payments and his weekly meetings with his probation officer.

As already noted, the judge found defendant guilty of each of the matters alleged in the People's petition, revoked defendant's probation, and sentenced him to five years in prison. Pursuant to defense counsel's request, defendant was credited with 154 days time served, 105 of those days having been spent in Cook County jail prior to being placed on probation and 49 days as credit for the time he was held in custody prior to being committed to the Department of Corrections. Inasmuch as counsel did not request it, defendant was not at this time given credit for the 39 days he spent on probation.

■ Defendant argues that it was an abuse of discretion for the court to terminate his probation, contending that pursuant to section 5—6—2(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1005—6—2(c)), a court may terminate probation only as follows:

> "The court may at any time terminate probation or conditional discharge if warranted by the conduct of the offender and the ends of justice ***." (Ill. Rev. Stat. 1987, ch. 38, par. 1005—6—2(c).)

A reviewing court will not disturb a trial court's order revoking probation absent an abuse of discretion. *People v. Cozad* (1987), 158 Ill. App. 3d 664, 511 N.E.2d 211, *cert. denied* (1988), 485 U.S. 964, 99 L. Ed. 2d 432, 108 S. Ct. 1233.

Defendant first addresses the requirement that he meet with his probation officer two times a week, with one extra weekly visit until the commencement of his community service. Defendant complains that in revoking his probation merely because he was temporarily unable to comply with the above-noted conditions, the trial court abused its discretion. This inability, he asserts, was due to the $14 weekly expense of public transportation to the probation office, which, being unemployed, he was unable to afford. Defendant further claims that he was eventually eligible to receive public aid, and at the time of the hearing, he had just become able to afford to meet with his probation officer and that he make the requisite restitution.

Defendant cites *People v. Welch* (1979), 78 Ill. App. 3d 184, 397 N.E.2d 94, in support of his position. In *Welch*, it was established that defendant was not given any assistance by his probation officer in obtaining psychiatric counseling. The court concluded that the "responsibility was juggled back and forth without ever being shouldered by defendant or the agency with which he dealt," and reversed the trial judge's finding of violation of probation. (*Welch*, 78 Ill. App. 3d at 187.) Defendant argues that, similarly, his probation officer did not give him any assistance in resolving his problem of keeping his appointments. Defendant asserts that in applying for and receiving public aid, he removed the temporary barrier to his compliance.

In arguing that he did not pay restitution because he was unemployed and that therefore he did not have the means with which to do so, defendant cites section 5—6—4(d) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—6—4(d)), which provides:

"Probation *** shall not be revoked for failure to comply with conditions of a sentence or supervision, which imposes financial obligations upon the offender unless such failure is due to his willful refusal to pay."

Defendant adds that it is the burden of the State to prove that his failure to pay restitution was willful, asserting that where there is no such evidence, a judgment of violation of probation cannot be sustained. (*People v. Harder* (1975), 59 Ill. 2d 563, 322 N.E.2d 470; *People v. Boucher* (1974), 57 Ill. 2d 225, 311 N.E.2d 679.) Defendant claims that in the case at bar, no evidence of willfulness was adduced at trial, and that, accordingly, the judgment finding him in violation of his probation cannot be upheld.

As to the curfew requirement of his probation, defendant alleges that there is a dispute as to the exact meaning of the requirement that he be "at home" from 7 p.m. to 7 a.m. daily, and that at the hearing, testimony differed as to whether the defendant was at home on nine

different occasions.

Defendant also argues that in entering judgment, the court did not supply the basis for its determining that there be a revocation of probation, inasmuch as it might consist of a failure to report, failure to pay restitution, a violation of curfew, or any combination thereof, and that it is necessary for the prosecution to prove a violation of a particular provision of the probation order. (*Cozad*, 158 Ill. App. 3d at 674.) He concludes that he suffered prejudice because it is impossible to determine the court's reason for revocation from the record, and that the finding of a violation of probation should consequently be reversed.

■ We hold that defendant's failure to report to his probation officer in and of itself provides sufficient grounds to revoke probation. (*Cozad*, 158 Ill. App. 3d at 669; *In re B.R.J.* (1985), 133 Ill. App. 3d 542, 478 N.E.2d 1206.) Defendant began to fail to attend required meetings with his probation officer only seven days after he was put on such status; in fact, he attended only three of the required meetings.

*People v. Welch* lends no support for his position and is distinguishable, for in *Welch*, the defendant actively sought psychiatric counseling in compliance with the terms of his probation and was refused. Due in part to the defendant's diligence there, the court found that he was not solely responsible for the violation of his probation. (*Welch*, 78 Ill. App. 3d at 186.) In the instant case, defendant made no effort whatsoever to abide by that condition of his probation which required him to visit with his probation officer a definite number of times per week. Moreover, there is no showing that the officer, in any active or passive fashion, thwarted defendant's attempts to comply with the terms of his probation. The officer was at his office on each scheduled day. Furthermore, defendant's only effort to alert the officer of his situation consisted of a telephone report, and even then it had to be McCann who made the call, in which defendant stated merely that he was having difficulty getting to the office. We find that the rationale of *Welch* is not applicable to the case *sub judice* and that defendant's probation was properly revoked.

■ Since defendant made *no* effort either to pay restitution or to explain why he was unable to do so, the court was correct in revoking his probation on these grounds as well. In *Bearden v. Georgia* (1983), 461 U.S. 660, 668, 76 L. Ed. 2d 221, 230, 103 S. Ct. 2064, 2070, although the Court found that where defendant had borrowed money, repeatedly tried to find employment and informed the probation office that his payments would be late, his probation should not be revoked for failure to pay, the Court also went on to say:

"Similarly, a probationer's failure to make sufficient bona fide efforts to seek employment or borrow money in order to pay the find or restitution may reflect an insufficient concern for paying the debt he owes to society for his crime. In such a situation, the State is likewise justified in revoking probation and using imprisonment as an appropriate penalty for the offense." *Bearden*, 461 U.S. at 668, 76 L. Ed. 2d at 230, 103 S. Ct. at 2070.

In applying the reasoning of *Bearden* to the present case, we note that here there is no evidence that defendant attempted to become .employed, borrow money, or inform the probation office of his predicament. It was only at the revocation hearing that defendant informed the State and his probation officer that he "had just become able to" comply with the financial conditions of his probation since he was now on public aid. Consequently, we hold that in this instance also defendant's probation was properly revoked.

■ We find, too, that defendant did in fact violate his curfew requirement. Conflicting evidence alone does not provide a sufficient reason to reject a court's finding of a probation violation. (*People v. Whitfield* (1986), 147 Ill. App. 3d 675, 679, 498 N.E.2d 262.) We are constrained to note at this point also the engaging ambidexterity with which defendant addresses this part of his argument: on the one hand he would have the court believe that he could not afford the expense of transportation to McCann's office; yet on the occasions that McCann called upon him, defendant failed to be at home.

Moreover, although a probation revocation is subject to review, the reviewing court will not disturb the finding unless it is against the manifest weight of the evidence. (*Cozad*, 158 Ill. App. 3d 664, 511 N.E.2d 211.) In *Cozad*, the defendant's probation was revoked when he violated his curfew on only two occasions, the court holding that since a violation of a curfew condition frustrates the goals of probation, such a violation alone serves as proper grounds for the revocation thereof. (158 Ill. App. 3d at 670.) Here, since the defendant violated his curfew at least seven times, we cannot say that the trial judge abused his discretion in revoking his probation.

■ As to defendant's last point, the trial court clearly and correctly found him guilty on "each" of the three charges, the court stating:

"Finding of guilty as to *each* of these matters. I have a presentence before me, but the presentence is of June 4th, 1987. *** By the way, judgment on the finding of guilty in *each* matter." (Emphasis added.)

As noted previously, if any one of multiple conditions is violated, it is

within the trial court's discretion to revoke an offender's probation. Defendant made no effort to find employment or some other means of meeting the conditions of his probation beyond applying for public aid—and even as to that, he failed to inform the probation officer until the hearing on revocation. The trial court's finding him guilty of violating each of the conditions was not against the manifest weight of the evidence, nor was it an abuse of its discretion.

■■ Defendant's final argument is that he is entitled to 39 days time served on probation to be credited against his sentence of imprisonment. Defendant asserts that the 1987 sentencing statute is applicable here in light of the fact that his original offenses took place in 1987, as did his alleged probation violation and resentencing hearing. The statute provides:

> "(h) Resentencing after revocation of probation, conditional discharge or supervision shall be under Article 4. Time served on probation, conditional discharge or supervision shall be credited by the court against a sentence of imprisonment or periodic imprisonment unless the court orders otherwise." (Ill. Rev. Stat. 1985, ch. 38, par. 1005—6—4(h).)

Pursuant to this statute, defendant argues that he was entitled to a total of 193 days credit against his sentence. The trial court granted him only 154 days of such credit. Prior to being placed on probation on June 15, 1987, defendant had served 105 days in Cook County jail; on July 24, 1987, he was held in custody, and remained in custody for 49 additional days until September 11, 1987, when he was placed in the custody of the Department of Corrections for five years. Although he received credit for ˜uch time served, defendant was not given credit for the 39 days he spent on probation, to which he asserts he is entitled. As previously noted, defense counsel did not request credit for these 39 days; accordingly, the State contends in its brief that the issue is waived. However, the State in oral argument did not press the point. Consequently, we grant defendant the 39 days additional credit he seeks in this case.

Affirmed in part, and modified in part.

BILANDIC, P.J., and EGAN,* J., concur.

---

*Judge Egan participated in the decision of this case prior to becoming a member of the sixth division.