THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LEONIA DAVIS, Defendant-Appellant.

Second District   No. 2—89—0684

Opinion filed July 25, 1991.

G. Joseph Weller and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, and Terrence R. Lyons, of counsel), for the People.

PRESIDING JUSTICE REINHARD delivered the opinion of the court:

Defendant, Leonia Davis, pleaded guilty to the charge of State benefits fraud (Ill. Rev. Stat. 1985, ch. 38, par. 17—6(a)) and was sentenced by the circuit court of Du Page County to a two-year term of probation conditioned on, *inter alia*, payment of restitution in the amount of $22,800. The circuit court subsequently granted the State's petition to revoke defendant's probation for failure to pay restitution. A new sentence of 30 months' probation, including a 30-day jail sentence and a restitution order as conditions thereof, was imposed.

Defendant raises two issues on appeal: (1) whether the trial court erred in revoking defendant's probation based on its finding that defendant willfully failed to pay restitution; and (2) whether the court

erred in sentencing defendant to 30 days in jail and reinstating the same restitution order.

Defendant was charged in an amended indictment with the offense of State benefits fraud in that, between January 1, 1983, and May 31, 1986, she received benefits from the Du Page County Housing Authority by misrepresenting her name, social security number and that her only source of income was public aid when, in fact, she was employed under the name Carol Simpson and was using different social security numbers at her employment. She was also charged with theft based on the same conduct for the period between October 15, 1981, and December 31, 1982.

Pursuant to a negotiated plea agreement, defendant pleaded guilty to the instant offense on May 4, 1987, and the State recommended a sentence of two years' probation conditioned upon defendant serving 30 weekends in jail, serving 100 hours of community service, and paying $22,800 in restitution. The restitution was to be paid in the following manner: $200 per month the first year, beginning May 1987; $300 per month the second year; $400 per month the third year; and $500 per month the fourth and fifth years. The State also agreed to nol-pros the theft charge. The trial court imposed the agreed-upon sentence.

On September 29, 1988, a petition to revoke defendant's probation was filed alleging that defendant willfully failed to pay $21,980 in restitution.

A hearing on the State's petition to revoke probation was conducted on May 5, 1989. Nancy Pauling, a probation officer with the Du Page County Probation Department, testified that defendant, who had been employed on a part-time basis from May 1987 to October 1987, had completed eight hours of public service. Defendant made four payments of $200 for a total of $800. Since that time, defendant paid an additional $38, with the last payment of $3 being received in May 1989. Defendant also paid all of her work release fees.

Pauling stated that defendant had not been employed since October 1987. Defendant had some type of blood problem associated with her pregnancy and was hospitalized for the birth of her child in July 1988. Defendant had not informed Pauling of any medical problems which prevented her from being employed after the birth of the baby. After the baby was born, defendant's husband had not maintained full-time employment and took jobs as a truck driver when he could. Pauling did not know how much money defendant's husband was making during this period of time.

Pauling testified that defendant had three children, two of whom, including the baby, currently live with her. Defendant was not living with her husband at the time of the hearing. Defendant had been evicted from her apartment because she was unable to pay rent and, since April 1989, was living with her sister in Bolingbrook. Pauling was not aware of whether defendant's husband provided financial support of the baby.

Pauling had not asked defendant to provide her with information or documentation regarding her efforts to obtain employment. Defendant told her that she had "not been able to make payments, due to having a small child" and that "it would cost her approximately $90 a week to provide day care for the child and for her to find work there would not be much surplus of money between the two." Pauling stated that defendant had not been able to leave the baby with relatives because defendant had no transportation. The sister with whom defendant lives is employed.

Pauling further testified that she did not know how defendant maintained financial support of herself, that she did not know what defendant's financial assets were and that defendant did not own an automobile. To her knowledge, defendant had not had any funds available to pay the restitution after defendant stopped working.

Following this testimony, defense counsel requested a finding in defendant's favor, arguing that the State had not met its burden of showing that defendant had the ability to pay and willfully failed to pay the restitution. The State argued that there was no medical reason why defendant could not be employed except for a short period of time around July 1988 and that defendant was required to take some initiative in becoming employed. The court then noted that the testimony regarding defendant's difficulties in obtaining employment was "all very vague." It determined, however, that it was "inferable" that there was a willful refusal to pay and concluded that the noncompliance was willful, stating, "[t]he facts here are such there is nothing to indicate she doesn't have the ability to obtain employment and work." The court later stated:

> "I am not minimizing the fact that being a mother is a job, but I think we all know there are lots of women who have children, and they are out there working as soon as they are up and around on their feet, and making some arrangements to get out and work."

The court then denied defendant's motion for a directed finding.

Defendant presented no evidence. Finding that defendant willfully failed and refused to pay restitution and that she failed to complete

the public service requirement, the circuit court revoked defendant's probation.

Thereafter, defendant submitted a written statement to be considered by the circuit court at her sentencing hearing. Defendant stated that she had found public service work on her own and stated that she was presently looking for employment. Medical records were also submitted to the court which stated that defendant's pregnancy was complicated by a low platelet count, that defendant's baby was delivery by cesarian section, and that defendant was in the hospital from July 11 to July 15, 1988.

At the sentencing hearing, the State stipulated that defendant had completed the public service requirement. A letter is included in the record which states that defendant served 92 hours at Du Page Township between May 15, 1989, and June 8, 1989. The letter also stated that defendant was a very good worker. Defendant addressed the court, stating that she never intended not to pay the restitution; she just was not able to pay it. She stated that, when she tried to find a job, she was not able to find one that would allow her to work, pay child care and have enough to survive on. She was seeking help through the displaced homemakers' program to improve her job skills.

The circuit court sentenced defendant to a term of 30 days in the Du Page County jail and a term of 30 months' probation with credit of 15 months and 23 days for time she served on probation prior to the filing of the petition to revoke probation. The court also ordered that the remaining restitution be paid within a five-year period and stated that it would request that the probation department monitor defendant's improvement in the work field and adjust the restitution payments accordingly. This appeal followed. Pursuant to defendant's motion in this court, we stayed imposition of defendant's jail sentence upon the posting of a $1,000 personal recognizance bond.

On appeal, defendant concedes that she did not make the required restitution payments. Instead, she contends that the State failed to meet its burden of proving that her failure to comply with the financial conditions of her sentence was willful.

Section 5—6—4(d) of the Unified Code of Corrections (Code) provides, in pertinent part, as follows:

"Probation *** shall not be revoked for failure to comply with conditions of a sentence or supervision, which imposes financial conditions upon the offender unless such failure is due to his willful refusal to pay." Ill. Rev. Stat. 1989, ch. 38, par. 1005—6—4(d).

Section 5—5—6(h) of the Code is also instructive and provides:

"A sentence of restitution may be modified or revoked by the court if the offender commits another offense, or the offender fails to make restitution as ordered by the court, but no sentence to make restitution shall be revoked unless the court shall find that the offender has had the financial ability to make restitution, and he has willfully refused to do so. If the court shall find that the defendant has failed to make restitution and that the failure is not willful, the court may impose an additional period of time within which to make restitution. The length of said additional period shall not be more than 2 years." (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—6(h).)

This section is applicable to restitution which is required as a condition of probation. *People v. Whitfield* (1986), 146 Ill. App. 3d 322, 327, 496 N.E.2d 743.

■ In a probation revocation proceeding, the State must establish, by a preponderance of the evidence, that the defendant violated a condition of his probation. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—6—4(c); *People v. Crowell* (1973), 53 Ill. 2d 447, 451, 292 N.E.2d 721.) Before probation can be revoked based upon the failure to comply with the financial conditions of a sentence of probation, however, it is also incumbent upon the State to prove that the defendant willfully refused to pay. (*People v. Harder* (1975), 59 Ill. 2d 563, 567, 322 N.E.2d 470.) Willful failure to pay means a voluntary, conscious and intentional failure. (See *Department of Revenue v. Joseph Bublick & Sons, Inc.* (1977), 68 Ill. 2d 568, 576-77, 369 N.E.2d 1279.) The trial court's ruling on a petition to revoke probation will not be disturbed on appeal unless it is against the manifest weight of the evidence. *People v. Houston* (1987), 118 Ill. 2d 194, 199, 514 N.E.2d 989.

As noted above, probation may be revoked for nonpayment of restitution only if the probationer is able to pay and willfully fails to do so. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—6(h).) A probationer who is unemployed, of course, may lack the financial ability to make restitution. As the following review of the cases in this area reveals, however, unemployment is not a sufficient excuse for nonpayment if the unemployment constitutes, in effect, the vehicle by which the probationer willfully evades payment of restitution. The central question in the instant case, then, is whether defendant's failure to find employment effectively constituted a willful failure to pay restitution.

In *People v. Harder* (1975), 59 Ill. 2d 563, 322 N.E.2d 470, the State's evidence showed only that defendant had failed to pay restitution; the State did not contest the defendant's explanation of why she was unable to pay. The supreme court held that this was insufficient

to show willful nonpayment of restitution by the defendant. (*Harder*, 59 Ill. 2d at 567, 322 N.E.2d at 472.) Additionally, in *Harder*, as is the case here, the cause of defendant's inability to pay restitution arose after she had promised to make restitution. See *Harder*, 59 Ill. 2d at 567, 322 N.E.2d at 472.

In reliance on *Harder*, this court in *People v. Bullard* (1977), 52 Ill. App. 3d 712, 367 N.E.2d 1017, held that the defendant's failure to pay restitution was not proved to be willful where he explained that he could not afford to make his payments due to unemployment and time spent learning a trade. (*Bullard*, 52 Ill. App. 3d at 714, 367 N.E.2d at 1019.) A similar conclusion was reached in *People v. Smolk* (1976), 40 Ill. App. 3d 281, 282-84, 352 N.E.2d 269, where the State did not contest the defendant's testimony that he was unable to work because he "passed out on the job" and was being treated by physicians.

■ In this case, the State's only witness, Pauling, testified that defendant made restitution payments before becoming unemployed. Pauling also testified that, to her knowledge, defendant had not had any funds available to pay the restitution since October 1987, when defendant stopped working. There was nothing in Pauling's testimony to establish that defendant had the ability to pay the restitution, and the fact that defendant was evicted from her apartment further demonstrates the deterioration of her financial condition. Pauling also offered no testimony that defendant was employable or that she had not sought work.

Even though defendant did not offer evidence, the gist of her explanation of being unemployed was related by Pauling: defendant experienced a blood disorder during her pregnancy and, following the birth of the child, defendant could not find employment sufficient to enable her to afford both child care and restitution. Here, as in *Harder*, *Bullard* and *Smolk*, the State did not contest the defendant's explanation of her failure to pay or, more precisely in the instant setting, the cause of her unemployment. Insofar as the cause of defendant's unemployment is concerned, in fact, the State did not offer evidence either in support of its position or in contradiction of defendant's explanation to Pauling. We note that the State did not call defendant as a witness to elicit such information. See *Minnesota v. Murphy* (1984), 465 U.S. 420, 435-36 n.7, 79 L. Ed. 2d 409, 424-25 n.7, 104 S. Ct. 1136, 1146-47 n.7 (compelling probationer to appear to discuss noncriminal violations of probation does not offend the privilege against self-incrimination); 3 W. LaFave & J. Israel, Criminal

Procedure §25.4, at 164 (1984). Contra *People v. Yantis* (1984), 125 Ill. App. 3d 767, 466 N.E.2d 603 (effectively overruled by *Murphy*).

We find the State's reliance on *People v. Moaton* (1989), 182 Ill. App. 3d 161, 537 N.E.2d 989, and *People v. Cottrell* (1986), 141 Ill. App. 3d 364, 490 N.E.2d 950, to be misplaced. In *Moaton*, the defendant made no effort either to pay the restitution or to explain why he was unable to do so; he made no effort to obtain employment and did not inform the probation officer of his predicament until the hearing on the State's petition to revoke probation. (*Moaton*, 182 Ill. App. 3d at 166-67, 537 N.E.2d at 992-93.) Similarly, in *Cottrell* the defendant claimed he looked for work repeatedly, but he failed to apply at the local job service agency; he further admitted that he had not looked for work recently and that he probably could have paid the money but just forgot. *Cottrell*, 141 Ill. App. 3d at 367, 490 N.E.2d at 952; see also *People v. Nowman* (1980), 87 Ill. App. 3d 42, 44, 409 N.E.2d 95 (the defendant's failure to meet his financial obligations was caused by his willful failure to find work where there was evidence that the defendant was informed of but did not apply for available work).

We note that these cases differ somewhat from the instant case because here defendant did not present any evidence. Accordingly, it is difficult to derive from the cases a general rule as to what evidence the State must present to support a finding of willfulness. Here, however, the strength of the State's evidence, though unrebutted, was undercut by two factors. First, the State's only witness had no knowledge of defendant's efforts to find work. Second, even though defendant did not testify, the State's witness related the crux of defendant's explanation for her unemployment. On the facts in this record, we hold that the State failed to meet its burden in the instant case. While the requisite mental state may generally be inferred from the actor's conduct and from other circumstances (see *People v. Tye* (1990), 141 Ill. 2d 1, 15, 565 N.E.2d 931), we believe that, in the present context, simply providing evidence of the probationer's unemployment, without more, is not sufficient to show willfulness.

In conclusion, we note that although a probationer's failure to make sufficient efforts to find employment in order to pay restitution may reflect an insufficient concern for paying the debt owed to society for the crime (*Bearden v. Georgia* (1983), 461 U.S. 660, 668, 76 L. Ed. 2d 221, 230, 103 S. Ct. 2064, 2070), the record here does not show that defendant refused to work merely to avoid making restitution. We conclude, therefore, that the circuit court's finding that defendant's failure to pay restitution was willful is against the manifest weight of the evidence.

Because of our conclusion that defendant's probation should not have been revoked, there is no need to reach the sentencing issue raised by defendant. We further note that, even without a finding of a willful failure to pay restitution, the circuit court has the authority to impose an additional period within which restitution may be paid. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—6(h).) We, therefore, remand the cause to allow the circuit court to consider whether such an extension is appropriate here.

The judgment of the circuit court of Du Page County is reversed, and the cause is remanded with directions.

Reversed and remanded with directions.

UNVERZAGT and NICKELS, JJ., concur.