No.  3--95--0425

                      (Consolidated with 3--95--0426)

_________________________________________________________________

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              THIRD DISTRICT

                                A.D., 1996

THE PEOPLE OF THE STATE OF     )  Appeal from the Circuit Court

ILLINOIS,                      )  of the 21st Judicial Circuit,

                              )  Kankakee County, Illinois,

Plaintiff-Appellee,       )

                               )

     v.                        )  No.  93--CF--552 and

                               )       94--CF--372

                               )

DEBORAH J. NECKOPULOS,         )  Honorable

                               )  John Michela,

     Defendant-Appellant.      )  Judge, Presiding.

________________________________________________________________

                     MODIFIED UPON DENIAL OF REHEARING

            JUSTICE SLATER delivered the opinion of the Court:

________________________________________________________________

     Deborah Neckopulos was charged with unlawful possession of a

controlled substance. 720 ILCS 570/402(c)(West 1994).  While on

bond for this offense, Neckopulos was charged with another count

of unlawful possession of a controlled substance.  720 ILCS 570/

402(c)(West 1994).  Neckopulos entered negotiated pleas of guilty

to both charges in exchange for the State's agreement not to

object to her placement in TASC.  Neckopulos was sentenced to

concurrent 36 month terms of probation conditioned upon her

compliance with the TASC program.  The State subsequently filed a

petition to revoke her probation for failure to co-operate with

TASC resulting in her discharge from the program.  After a

hearing, the trial court revoked Neckopulos' probation and

sentenced her to consecutive sentences of one and three years.   

Neckopulos appeals the order revoking her probation in each case.

     Neckopulos raises the following issues on appeal: (1)

whether the trial court erred in revoking her probation because

evidence presented by the State demonstrated that her failure to

attend TASC meetings was not wilful, (2) whether the trial court

erred in revoking her probation because evidence presented by the

State demonstrated that she did not have a meaningful opportunity

to begin drug treatment for her addiction due to her attendance

at only two meetings, (3) whether the trial court erred by

permitting the State to call her as a witness during the

probation revocation hearing in violation of the Criminal

Jurisprudence Act (725 ILCS 125/6 (West 1994)) and, (4) whether

the trial court violated her fifth amendment privilege against

self-incrimination when he compelled her to testify for the State

regarding her failure to attend TASC. 

     At the probation revocation hearing, the court took judicial

notice of the fact that Neckopulos was placed on probation

conditioned upon her compliance with the TASC program, and that

the alleged violation was noncompliance with that condition. 

     The State called Neckopulos as its sole witness.  Neckopulos

objected to being called as a witness, invoking her fifth

amendment privilege against self-incrimination.  The trial court

ruled that the privilege was unavailable to her because the

hearing did not involve a criminal offense, but rather only a

non-criminal allegation of a probation violation.  Over

Neckopulos' standing objection, the trial court ordered

Neckopulos to take the stand.      

     Neckopulos testified that she had been placed on probation

and, as a condition thereof, was obligated to comply with TASC. 

She also indicated her awareness that the TASC treatment would

last 36 months.  She stated that she attended Duane Dean Recovery

Unit (Duane Dean) as directed by TASC.  She was, however, unable

to recall either when she visited Duane Dean or the number of

those visits.   She subsequently stated that she attended on

approximately six occasions.  She admitted that she stopped

attending Duane Dean though she was not directed to do so by

TASC.

     When again asked by the State whether she was aware that

treatment was likely to last for an extended period, Neckopulos

responded in the negative and indicated that she had no memory of

the State's earlier question concerning the duration of her

treatment.  Her explanation for this memory failure was that she

was an addict whose "brains are not quite right."    

     She clarified that she was unable to remember the number of

times she attended Duane Dean because she was almost constantly

high during that time period.  She was not aware that she was

required to remain in contact with TASC.  She explained that she

did not report to TASC because she was unable to think when on

cocaine.  She was not only unaware of the dates of her

appointments, she was unaware what day it was.  Finally,

Neckopulos testified that despite her efforts she has been

unsuccessful in both in-patient and out-patient treatment.  

     The trial court found that by her failure to comply with the

TASC mandate to complete a course of treatment at Duane Dean,

Neckopulos wilfully failed to comply with the terms of probation. 

The reason for her failure was that her addiction to cocaine

deprived her of the reasoning to comply. 

     Neckopulos first argues that the revocation of her probation

was improper because the evidence presented by the State failed

to demonstrate that her probation violation was wilful. 

Neckopulos' argument assumes that the State must prove that the

probationer wilfully conducted herself in violation of the

conditions of probation in order for probation revocation to be

proper.  This underlying assumption is wholly without supporting

authority, and simply does not accurately state Illinois law. 

     Probation is a privilege to be employed when "the

defendant's continued presence in society would not be

threatening and the defendant's rehabilitation would be

enhanced."  People v. Allegri, 109 Ill. 2d 309, 314, 487 N.E.2d

606, 607 (1985).   Due to the fact that the purposes of probation

may be frustrated by nonculpable acts, revocation of probation

need not be based on the wilful conduct of the defendant.  People

v. Davis, 123 Ill. App.3d 349, 462 N.E.2d 827 (1984); Allegri,

109 Ill. 2d 309, 487 N.E.2d 606.  It is apparent from the facts

of this case that the purpose of Neckopulos' probation was to

enable her to receive treatment for her drug addiction.  Her

failure to attend this treatment frustrated the purpose of her

probation regardless of whether such failure was wilful.  As the

State was not required to prove that Neckopulos' failure to

comply with TASC was wilful, we conclude that any evidence of

Neckopulos' incapacity for wilful activity did not render the

trial court's revocation of her probation erroneous.

     Neckopulos next argues that the trial court's revocation of

her probation was erroneous because she had not had a meaningful

opportunity to begin drug treatment before TASC terminated her

from the program.  Like the defendants in People v. Carter, 165

Ill. App. 3d 169, 518 N.E.2d 1068 (1988) and People v. Hamelin,

181 Ill. App. 3d 350, 537 N.E.2d 3 (1989),  Neckopulos contends

that her probation violation occurred before she had a meaningful

opportunity to begin treatment and, therefore, revocation of her

probation defeated the goals of crime prevention and

rehabilitation expressed in the Alcoholism and Other Drug Abuse

and Dependency Act (the Drug Abuse Act) (formerly Alcohol and

Substance Abuse Act).  20 ILCS 301/1.1 et. seq. (West 1994).  

     In Carter, the defendant had been ordered to participate in

an in-patient TASC treatment program.  While the defendant was

still tenth on a waiting list for admission into the program, he

violated his probation by committing a theft and probation was

revoked.  The appellate court reversed the order revoking

probation, finding that the trial court had improperly used its

discretion to frustrate the purposes of the Drug Abuse Act

because defendant had never had an opportunity to participate in

the program prescribed for him by the court.

     Similarly, in Hamelin, the defendant's probation was revoked

before he ever had an opportunity to begin treatment.  Hamelin

was sentenced to a prison term to be followed by a period of

probation under the supervision of TASC to treat his drug

addiction.  There, the trial court revoked defendant's probation

because defendant attempted to bring cocaine into prison.  The

appellate court reversed holding that the defendant should have

had the opportunity to begin the therapy that the trial court

originally prescribed for him. 

     The cases relied upon by Neckopulos are clearly

distinguishable from the instant case.  In both Carter and

Hamelin, the defendants committed probation violations related to

their drug addictions before having the opportunity to commence

the drug treatment prescribed by the court.  Neckopulos was not

deprived of an opportunity to begin the treatment prescribed by

the court.  In fact, Neckopulos did begin the treatment.  She

admitted that after several treatment sessions, she stopped

attending treatment though not directed to do so by TASC.  The

lack of progress in her court-prescribed treatment was not caused

by the unavailability of the treatment but rather by her own

failure to take advantage of the opportunity presented.  We find

that the trial court's order revoking Neckopulos' probation did

not deprive her of a meaningful opportunity to begin court-

ordered treatment.

     Neckopulos next contends that she was called as a witness in

violation of the Criminal Jurisprudence Act (Act).  725 ILCS

125/6 (West 1994).  She argues that the Act clearly prohibited

her from being called by the State in the absence of a request by

her to be deemed a competent witness.  As she made no such

request, the State improperly called her as a witness at the

hearing to revoke her probation.

     The Act provides, in relevant part, that  "[a] defendant in

any criminal case or proceeding shall only at his or her own

request be deemed a competent witness, and the person's neglect

to testify shall not create a presumption against the person, nor

shall the court permit a reference or comment to be made to or

upon that neglect."  725 ILCS 125/6 (West 1994).

     The issue facing us is one of statutory construction.  The

primary rule of statutory construction is to ascertain and give

effect to legislative intent, and that intent is best evidenced

by the language of the statute.  People v. Fitzpatrick, 158 Ill.

2d 360, 633 N.E.2d 685 (1994).  "Where the statutory language is

clear and unambiguous, it will be given effect without resorting

to other aids for construction."  Fitzpatrick, 158 Ill. 2d at

364, 633 N.E. 2d at 687.  We find the language of the present

provision to be clear and unambiguous and confine our analysis to

its language.  

     From the plain language of the provision, we conclude that

it clearly prohibits the State from calling a defendant as a

witness (absent a request on her part) at any criminal

proceeding.  However, a revocation proceeding "is not a criminal

proceeding."  Minnesota v. Murphy, 465 U.S. 420, 435-436 n.7, 79

L. Ed. 2d 409, 425 n. 7, 104 S. Ct. 1136, 1146-47 n.7 (1984),

citing Gagnon v. Scarpelli, 411 U.S. 778, 36 L. Ed. 2d 656, 93 S.

Ct. 1756 (1973).  Therefore, the Act, which by its own language

applied only to criminal proceedings, did not bar the State from

calling Neckopulos as a witness at the revocation hearing.

     Neckopulos finally contends that her fifth amendment right

against self-incrimination was violated when she was compelled to

be a witness against herself despite her assertion of the

privilege.   We find this claim to be without merit.  

     The fifth amendment provides, in pertinent part, that no

person "shall be compelled in any criminal case to be a witness

against himself."  U.S. Const., amend. V.  The Supreme Court has

broadly interpreted the fifth amendment prohibition against

compelled testimony to permit a person not only to "refuse to

testify against himself at a criminal trial in which he is the

defendant, but also privileges him not to answer official

questions put to him in any other proceeding, civil or criminal,

formal or informal, where the answers might incriminate him in

future proceedings."  Murphy, 465 U.S. 420, 426, 79 L. Ed. 409,

418, 104 S. Ct. 1136, quoting Lefkowitz v. Turley, 414 U.S. 70,

77, 38 L. Ed. 2d 274, 281, 94 S. Ct. 316 (1973).

     In Murphy, the Supreme Court was faced with the issue of

whether a probationer's incriminating responses to a probation

officer's questions were admissible against him in a subsequent

criminal proceeding.  The Court concluded that if the questions

posed to the probationer, even if relevant to his probationary

status, required answers that would incriminate him in a pending

or later criminal prosecution, then a fifth amendment right

against self-incrimination would likely attach.  Murphy, 465 U.S.

420, 79 L. Ed. 2d 409, 1045 S. Ct. 1136.  However, the Court also

noted that:

               "The situation would be different if the

          questions put to a probationer were relevant

          to his probationary status and posed no

          realistic threat of incrimination in a

          separate criminal proceeding. * * *  Neither,

          in our view, would the privilege be available

          on the ground that answering such questions

          might reveal a violation of [a probationary]

          requirement and result in the termination of

          probation.  Although a revocation proceeding

          must comport with the requirements of due

          process, it is not a criminal proceeding." 

          Murphy, 465 U.S. at 435 n.7, 79 L. Ed. 2d at

          425 n.7., 104 S. Ct. at 1146 n.7.

     In People v. Martin, 226 Ill. App. 3d 753, 589 N.E.2d 815,

(1992), the State called a defendant to testify at a probation

revocation hearing concerning a non-criminal violation of a

condition of probation.  Following the analysis in Murphy, the

court in Martin concluded that "consistent with the fifth

amendment to the United States Constitution, the State may call a

defendant to testify at a probation revocation hearing to elicit

testimony which would show that the defendant had violated

conditions of his probation but which would not incriminate him

in any other proceedings."  226 Ill. App. 3d at 759, 589 N.E.2d

at 818.  Accord People v. Davis, 216 Ill. App. 3d 884, 576 N.E.2d

510, (1991); People v. Clark, 268 Ill. App. 3d 810, 645 N.E.2d

590 (1995); contra People v. Yantis, 125 Ill. App. 3d 767, 466

N.E.2d 603 (1984).

     As the hearing on the petition to revoke Neckopulos'

probation was not a criminal proceeding, the fifth amendment

privilege to decline to take the stand accorded to criminal

defendants at criminal proceedings was not available.  Further,

as the State's questions were relevant to Neckopulos' non-

criminal probation violation and posed no realistic threat of

incrimination in a future proceeding, the privilege to decline to

answer particular questions was also unavailable to her. 

Therefore, Neckopulos' testimony was not elicited in violation of

the fifth amendment.

     For the above reasons, we affirm the decision of the circuit

court.

     Affirmed.

     McCUSKEY, J., concurring.

No. 3--95--0425

                     (Consolidated with 3--95--0426)

    _________________________________________________________________

                                    

                                 IN THE

                                    

                       APPELLATE COURT OF ILLINOIS

                                    

                             THIRD DISTRICT

                                    

                               A.D., 1996

                                    

                                    

THE PEOPLE OF THE STATE OF      )  Appeal from the Circuit Court

ILLINOIS,                       )  of the 21st Judicial Circuit,

                                )  Kankakee County, Illinois,

     Plaintiff-Appellee,        )

                                )  No. 93--CF--552 and

          v.                    )      94--CF--372

                                )      

DEBORAH J. NECKOPULOS,          )  Honorable

                                )  John Michela,

     Defendant-Appellant.       )  Judge, Presiding.

_________________________________________________________________

JUSTICE LYTTON, specially concurring:

_________________________________________________________________

     Although I agree with the majority's opinion in most respects,

I  specially concur in order to address a troubling procedural

question.  What happens when a defendant invokes the Fifth

Amendment and simply refuses to testify at a probation revocation

hearing?

     The majority correctly holds that since a probation revocation

hearing is civil, the Fifth Amendment right to remain silent does

not apply in the same manner as in criminal cases.  See Murphy v.

Minnesota, 465 U.S. 420, 79 L.Ed. 2d 409, 104 S.Ct. 1136 (1984),

People v. Clark, 268 Ill. App. 3d 810, 645 N.E.2d 590 (1995),

People v. Martin, 226 Ill. App. 3d 753, 589 N.E.2d 815 (1992), and

People v. Davis, 216 Ill. App. 3d 884, 576 N.E.2d 510 (1991).  This

holding is correct as far as it goes, but it does not go far

enough.  

     When the privilege against self incrimination is raised in a

civil context, the party claiming it is required to testify or

suffer certain consequences by remaining silent.  If the party

refuses to testify, the court can draw negative inferences against

the party.  The fact finder does not violate the Fifth Amendment by

"drawing whatever inference from [a party's] silence that the

circumstances warrant."  Baxter v. Palmigiano, 425 U.S. 308, 318,

47 L.Ed 2d 810, 821, 96 S.Ct. 1551, 1557 (1976) (A prison

disciplinary board could properly give a prisoner's silence the

"evidentiary value [that] was warranted by the facts surrounding

his case."). 

     In Murphy, the Supreme Court extended the Baxter rule to

probation revocation hearings.  The court found that probation

revocation hearings were civil in nature, and, unless a statement

would incriminate the defendant in another criminal proceeding, the

defendant could be required to communicate with his probation

officer.  The court stated,

     "[N]othing in the Federal Constitution would prevent a

     State from revoking probation for a refusal to answer

     that violated an express condition of probation or from

     using the probationer's silence as 'one of a number of

     factors to be considered by the finder of fact' in

     deciding whether other conditions of probation have been

     violated."  Murphy, 465 U.S. at 435 n.7, 79 L. Ed. 2d at

     425 n.7, 104 S. Ct. at 1146  n.7 (emphasis added),

     quoting Lefkowitz v. Cunningham, 431 U.S. 801, 808 n.5,

     53 L.Ed. 2d 1, 9 n.5, 97 S.Ct. 2132, ___ n.5 (1977).

This situation can be likened to criminal cases prior to Griffen v.

California, 380 U.S. 609, 14 L. Ed 2d 106, 85 S. Ct. 1229 (1965),

when prosecutors could ask fact finders to draw inferences against

defendants because of their failure to testify.  Similarly, today

in probation revocation hearings, prosecutors can ask trial judges

to draw inferences against probationers if they do not testify.

     In his treatise of criminal procedure, Professor LaFave

describes the rule as follows: "...the defendant may be required to

testify regarding his noncriminal conduct even if it amounts to a

probation violation or else have his refusal considered against

him."  3 W. LaFave & J. Israel, Criminal Procedure §25.4, at 164

(1984) (emphasis added).  

     Many jurisdictions have adopted this rule in probation

revocation hearings.  See United States v. Robinson, 893 F. 2d 1244

(11th Cir. 1990) (trial court may infer a violation of a condition

of probation from defendant's silence); Calvert v. State, 310

N.W.2d 185 (Iowa 1981) (same); State v. Mangan, 343 So. 2d 599

(Fla. 1977) (same); Cassamassima v. State, 657 So. 2d 906 (Fla.

App. 1995) (probation revoked after refusal to answer); States v.

Ferguson, 72 Ohio App. 3d 714, 595 N.E.2d 1011 (1991) (trial court

may infer a violation of a condition of probation from defendant's

silence); Watson v. State, 388 So. 2d 15, (Fla. App. 1980) (same).

     A significant distinction exists between drawing inferences

from a probationer's silence and actually ordering the person to

testify.  The result for a probationer may indeed be the same,

depending on the inferences taken in any particular case, but the

distinction should not be ignored.  The Illinois cases cited by the

majority point favorably to Professor LaFave, but none address the

situation presented in this case, where the trial judge ordered the

defendant to testify.

     Finally, when a prosecutor attempts to prove a violation of

probation, the clear preference must always be to call the State's

own witnesses, such as probation officers or TASC employees.  While

a trial court may compel testimony through its contempt powers, 

reliance on the defendant's testimony alone should not be

encouraged and could easily backfire.  As the trial judge in this

case said, 

     "And if her brains are fried on the drugs, maybe we ought 

     to get her off the witness stand and get somebody from

     TASC in here and tell what she was directed to do [and]

     what she didn't do.  Or we can go around and around the

     post with people who have got fried brains and [not]

     expect anything rational out of them."  (Emphasis added.)