*In re* N.W., a minor (The People of the State of Illinois, Petitioner-Appellee, *v.* N.W., Respondent-Appellant).

Second District No. 2—83—0566

Opinion filed June 27, 1984.

G. Joseph Weller, Paul J. Glaser, and Kyle Wesendorf, all of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and Andrea Becker, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

A supplemental petition for adjudication of wardship was filed in the circuit court of Lake County alleging that N.W. committed the offenses of aggravated assault, battery, burglary, criminal damage to property, and theft. Subsequently, the petition was amended to include allegations of resisting a police officer.

After an adjudicatory hearing, the court directed a finding of not guilty on the allegations of burglary, criminal damage to property and

two allegations of resisting a police officer. At the close of the evidence, the court found N.W. guilty of aggravated assault and battery of Curlin Pennick, theft of a stereo equalizer and resisting police officer Chrisman.

Following a dispositional hearing, the court entered judgment, committing N.W. to the Department of Corrections.

N.W. appeals raising these two issues: (1) whether the commitment judgment should be vacated because the court failed to adjudicate the minor a delinquent, and (2) whether the court abused its discretion in committing N.W. to the Department of Corrections.

At the adjudicatory hearing, Curlin Pennick testified that on May 23, 1983, he was approached in an alley in the city of Zion by N.W. and William Hughes. He stated that Hughes pointed a pistol at his face and threatened to beat him up. N.W. then grabbed Pennick. Hughes tried to punch Pennick in the face but when he ducked, Hughes hit N.W. instead. N.W. fell to the ground and Pennick ran off.

N.W.'s version of the incident in the alley differed from Pennick's testimony. N.W. stated that he and Hughes met Larry Davis and Curlin Pennick and that an argument ensued between Pennick and Hughes. During the argument Hughes displayed a "play gun." N.W. testified that he grabbed Pennick while Davis grabbed Hughes to keep them separated. Hughes then accidently hit N.W. Davis told essentially the same story.

Concerning the theft incident, Michael Harvey testified that on May 23 he was at the home of Ronda Tyson making a tape. He stated that he owned a 1978 Datsun, and he identified a stereo equalizer which he discovered had been removed from his car on May 23.

Robert Tyson and Steven Williams were also with Harvey at the Tyson house. They testified that they saw N.W. and four other boys outside of the house but did not see anyone in the vicinity of the car.

John Chrisman, a Zion police officer, testified that on the evening of May 23 he responded to a call regarding gunshots. He was looking for N.W. and saw him walking down the street with eight other people near 24th and Hebron. Chrisman stated that he observed N.W. reach in his coat and then throw something over a fence. Officer Velden, who also responded to the call, testified that he retrieved a stereo equalizer on the other side of the fence at the point where Chrisman told him N.W. had thrown something.

Chrisman also testified that he approached N.W. and announced that he was under arrest. When he led N.W. back to the squad car to frisk him, he began to struggle. Two other officers, Bridges and Lowery, arrived and helped Chrisman subdue N.W.

N.W. stated that he did not struggle with Officer Chrisman. Steve Gilmore and Jeffrey Dennis also testified that N.W. did not struggle.

■ Initially, the State contends that N.W.'s failure to raise the adjudication of delinquency issue at trial or object to proceeding to a dispositional hearing or to the entry of the dispositional order waives this issue on appeal. (*In re Scott* (1978), 62 Ill. App. 3d 367, 368-69.) The law is well settled that issues raised for the first time on appeal may not normally be considered by a reviewing court. (*Moehle v. Chrysler Motors Corp.* (1982), 93 Ill. 2d 299.) Since the case concerns a matter of statutory interpretation and all the facts necessary for determination of the issue are before the court, this court of review may rule on the issue. *Cronin v. Lindberg* (1976), 66 Ill. 2d 47, 61; *People ex rel. Fahner v. Hedrich* (1982), 108 Ill. App. 3d 83, 87.

■ N.W. contends that the commitment order should be vacated because the court failed to adjudicate him delinquent before proceeding to the disposition. N.W. clarifies his challenge by stating that the present case does not concern *when* such an adjudication must take place, but rather that it did not take place at all. His argument is not supported by the record, for prior to the court's announcement of disposition, it stated:

> "Given the background, I hereby adjudicate him a delinquent ward. I find that [N.W.'s] parents are unable for reasons other than financial circumstances to train or discipline [N.W.] and that the best interests of the minor and the public would not be served by placement under Section 5—7.
>
> I find that placement in the Department of Corrections, Juvenile Division, is appropriate, and I order that that be the disposition in this case."

Therefore, contrary to N.W.'s assertion, we perceive his argument to relate to an alleged failure of the trial court to adjudicate him a delinquent prior to the dispositional hearing itself.

■ The processing of a petition filed under the Juvenile Court Act involves three separate court determinations. First, at an adjudication hearing, the court must determine whether the minor is delinquent, addicted, requiring authoritative intervention, neglected or dependent as defined in the Act. (Ill. Rev. Stat. 1983, ch. 37, par. 702—1.) If the court finds that the minor falls into one of these categories, it must then determine whether it is in the best interest of the minor and the public that the minor be adjudged a ward of the court. (Ill. Rev. Stat. 1983, ch. 37, par. 704—8(2).)[1] Adjudication of wardship

---

[1]Amended by Public Act 83—931, effective January 1, 1984.

is a prerequisite to disposition of the minor, the third court determination. Ill. Rev. Stat. 1983, ch. 37, par. 704—8(1), (2); *In re J.J.* (1979), 71 Ill. App. 3d 227.

N.W. states in reference to the Juvenile Court Act (Ill. Rev. Stat., 1982 Supp., ch. 37, par. 704—8), "This section clearly anticipates that some exercise of discretion take place before the court is authorized to proceed with a dispositional hearing." Before addressing the merits of N.W.'s contention, the State argues that previously on July 13, 1982, N.W. had been adjudicated a delinquent ward of the court in that he had committed the offense of burglary. The same trial judge as in the present case entered that order. The dispositional order of July 13, 1982, set forth a one-year period of probation which was to terminate June 29, 1983. This order of adjudication of delinquent wardship was never vacated; consequently, the State concludes that N.W. was a delinquent ward of the court when he entered the courtroom on June 8, 1983, for the hearing and remained a delinquent ward of the court throughout the course of both hearings. The State specifically referred to N.W.'s status at the beginning of the dispositional hearing where it stated:

"MS. MARTIN: As your Honor has pointed out, the minor's first contact was back in January of 1981, over 2 years ago, at which time he was on a 90-day diversionary program and received services from that.

He also was placed on 704—7 supervision from January of '82 through July of '82, and then he was adjudicated delinquent on the 13th of July and remained so until it was supposed to terminate this month."

This statement was met with no objection from the minor.

The case of *In re F.S.* (1979), 70 Ill. App. 3d 526, is instructive. In that case, the minor appealed from a judgment entered on October 26, 1977, adjudicating him to be a delinquent minor and committing him to the Department of Corrections. Prior to that date, the court had entered an earlier finding and order adjudicating the minor a ward of the court and placing him on probation. The minor contended that the court lacked jurisdiction to proceed to the dispositional hearing because the record neither reflected nor supported a finding by the trial court that it was in the best interests of the minor and the public that he be adjudged a ward of the court. The reviewing court noted that no such determination had been made by the court but stated:

"[T]he record reflects that defendant had previously been found to be a delinquent and that the court had determined it to be in

the best interests of the minor and the public that the minor be made a ward of the court in an earlier proceeding ***. We hold that the trial court, because of its earlier and still effective adjudication of wardship of defendant-minor, did have jurisdiction to proceed to a dispositional hearing on the instant matter." (70 Ill. App. 3d 526, 527.)

In making this finding, the court relied on section 5—11 of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 705—11), which stated:

"(1) All proceedings under this Act in respect of any minor automatically terminate upon his attaining the age of 21 years.

(2) Whenever the court finds that the best interests of the minor and the public no longer require the wardship of the court, the court shall order the wardship terminated and all proceedings under this Act respecting that minor finally closed and discharged. The court may at the same time continue or terminate any custodianship or guardianship theretofore ordered but such termination must be in compliance with Section 5—8."

It is not entirely clear whether the *F.S.* court considered the prior finding of delinquency as well as that of wardship to be still effective as the State argues in the present case. Nevertheless, the fact that the delinquency finding had to precede the wardship determination might be logically interpreted as extending its effectiveness also.

■ Following this line of reasoning, since the original order placing N.W. on probation had not expired nor was it terminated by the court and N.W. had not attained the age of 21 years, the order of disposition was subject to modification upon the filing of a supplemental petition under the provisions of sections 4—1(6) and 5—2 of the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, pars. 704—1(6) and 705—2). (See *In re J.J.* (1979), 71 Ill. App. 3d 227, 229-30.) To be noted, however, is that a supplemental petition seeking revocation of probation was not filed in the present case. Rather, a petition to begin adjudicatory proceedings anew is present. The reason for this procedure is unclear since the State had to prove the commission of the offenses beyond a reasonable doubt, rather than the lesser burden of preponderance of the evidence. (*In re Thompson* (1980), 79 Ill. 2d 262, 267-68.) Nevertheless, by so doing the State eliminated the requirement that the court base its subsequent dispositional order solely on the conduct which resulted in the initial finding of delinquency. *In re R.P.M.* (1983), 113 Ill. App. 3d 376, 378.

N.W. relies on *In re Beasley* (1977), 66 Ill. 2d 385, for the proposition that a finding of guilt alone is an insufficient basis upon which to

proceed to a dispositional hearing. N.W.'s reliance appears misplaced, for *Beasley* dealt with the standards which must guide a trial judge in assessing the due process sufficiency of juvenile delinquency proceedings wherein minors make admissions of guilt. (66 Ill. 2d 385, 389.) A reading of *Beasley* finds no reference to a finding of guilt by the court after a complete hearing as in the present case.

 It is our opinion that the court's finding of guilt of the offenses listed in the State's supplemental petition for adjudication of wardship removed any doubt that the court properly proceeded to the dispositional hearing and commitment order. We find that *In re J.N.* (1982), 91 Ill. 2d 122, is dispositive of this issue. *J.N.* involved the issue of whether the circuit court's order was final. In discussing this order, the court stated:

> "While the circuit court did not explicitly find J.N. to be a delinquent, it did find J.N., who was 13 years old, guilty of the offense as charged in the petition for adjudication as a delinquent. The court pronounced the finding of guilt in open court and in a written order that was never vacated. Considering this, we must treat that finding as a finding of delinquency, because the Act defines a delinquent as a minor who 'prior to his 17th birthday has violated *** any federal or state law ***.' Ill. Rev. Stat. 1979, ch. 37, par. 702—2." (91 Ill. 2d 122, 128.)

Additionally, the *J.N.* court stated that the minor need not be explicitly adjudged to be a ward of the court to give the court jurisdiction. An adjudication of wardship may be implied. (*In re J.N.* (1982), 91 Ill. 2d 122, 129; *In re Scott* (1978), 62 Ill. App. 3d 367, 368.) Therefore, we conclude that the trial court explicitly adjudicated the minor a delinquent ward prior to its announcement of disposition and impliedly adjudicated the minor a delinquent at the conclusion of the adjudicatory hearing by its finding of guilt for the offenses alleged. Further, applying the court's holding in *J.N.*, the finding of guilt, coupled with the order of commitment to the Department of Corrections, also reasonably implied the adjudication of the minor as a ward of the court.

N.W. next contends that the court abused its discretion in three respects by committing him to the Department of Corrections. First, he argues that the order was against the manifest weight of the evidence. Secondly, he states that the order was contrary to statutory intent. Lastly, he claims that the comments of the court indicate that it failed to give adequate consideration to less drastic placement alternatives due solely to a desire to punish him.

 It is well established that it is the function of the trial court to determine the dispositional order to be entered and the decision

will not be disturbed unless there is an abuse of discretion demonstrated. (*In re C.O.* (1979), 73 Ill. App. 3d 369, 373, quoting from *In re Wilson* (1976), 40 Ill. App. 3d 619, 622; *In re Young* (1978), 63 Ill. App. 3d 897, 898.) Also, the statute gives the juvenile court wide discretion in determining an appropriate disposition. (*In re Scott* (1978), 62 Ill. App. 3d 367, 370.) A review of the record in the present case indicates that there was ample evidence to support the trial court's decision to commit the minor to the Department of Corrections.

■ N.W. argues that the court acted contrary to statutory intent which he perceives as requiring the court to give preference to placement alternatives other than the Department of Corrections as expressed in section 5—2 of the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 705—2). This argument need not be addressed, for the record indicated that the court gave due consideration to less severe placement alternatives as required by section 5—10(1) of the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 705—10(1)), which provides that a minor may be committed to the Department of Corrections only if the court finds that (a) his parents are unfit or unable for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to do so, and (b) the best interests of the minor and the public will not be served by placement under section 5—7 of the Act. Although the court expressed regret for the necessity of its commitment decision, it nevertheless found the less restrictive alternatives to commitment to be inappropriate in the present case. Specifically, the record reveals that the court reviewed the total history of the minor from 1981 to the present. That history included assault, aggravated battery and burglary. More importantly for the purposes of this appeal, the court noted the failure of prior placements to help N.W. withstand negative peer pressure, which was conceded by all involved to be the root of N.W.'s problem.

In 1981 N.W. had been involved in a 90-day diversionary program and was also provided with court supervision during that year. In 1982, after being adjudicated a delinquent ward, N.W. was placed at Rosecrance, a residential facility, where he received intensive services. After discharge from Rosecrance, N.W. was found guilty of battery on one occasion and guilty of driving under the influence of alcohol on another. Because of problems in the Zion-Benton school, he was placed by SEDOL in the Adler school in Libertyville. The Chrysalis program in which he was enrolled was based on positive peer-group pressure, as was the Rosecrance program. The court also noted the positive custody report during N.W.'s most recent period in secure de-

tention. Of particular significance was the court's recognition that N.W.'s family was supportive and extremely cooperative. The evidence before the court indicated that N.W. had been successful in highly structured situations. As N.W. states, such placement had proven effective. However, the court was also cognizant of the central problem in the present case, namely the inability of N.W. to function acceptably in society when out of a highly structured environment. The record reveals that contrary to prior court order, N.W. continued to associate with a peer group which included other delinquent wards of the court. In short, there was extensive evidence to indicate that N.W.'s parents, though highly supportive, were unable to discipline the minor when away from home and among his peers. There was also a history of the failure of other alternatives employed in the past to correct and rehabilitate N.W. in accordance with the purposes of the Juvenile Court Act. *In re Beasley* (1977), 66 Ill. 2d 385; *In re Dow* (1979), 75 Ill. App. 3d 1002.

The minor appears to argue that the court placed too much reliance on his prior contacts with the police when considering proper disposition. A juvenile court, however, may consider a variety of factors such as prior arrests (*In re Siebert* (1975), 29 Ill. App. 3d 129), station adjustments or curfew violations (*In re Sneed* (1976), 38 Ill. App. 3d 1041, 1042), and the social investigation (*In re Stead* (1978), 59 Ill. App. 3d 1012, 1014) in determining whether to commit to the Department of Corrections. The record does not substantiate the minor's claim that the court desired to punish him. As already noted, the court considered the success of prior dispositions, the supportiveness of the family and the social investigation report, as well as prior police contacts. It expressed regret at what it perceived to be a necessary result.

The dispositional choice of the Department of Corrections was both supported by the evidence and in line with statutory intent. Commitment could have reasonably been viewed by the court as affording the structured setting in which N.W. had been successful in the past while at the same time adequately safeguarding the protection of the public and the best interests of the community in light of the stated purposes of the Juvenile Court Act.

It is our opinion that both the finding of delinquency and adjudication of wardship based on delinquency properly preceded the minor's commitment to the Department of Corrections. A review of the record further indicates that the juvenile court did not abuse its discretion. The commitment order was neither against the manifest weight of the evidence nor contrary to statutory intent. The court gave ade-

quate consideration to less drastic placement alternatives.

For the reasons stated, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

SEIDENFELD, P.J., and REINHARD, J., concur.