*In re* J.S.L., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. J.S.L., Respondent-Appellant).

Second District   No. 2—88—1206

Opinion filed April 24, 1990.

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GEIGER delivered the opinion of the court:

The State filed two petitions against the respondent minor, J.S.L., seeking to have him adjudged a delinquent minor and made a ward of the court pursuant to section 2—2 of the Juvenile Court Act (the Act) (Ill. Rev. Stat. 1985, ch. 37, par. 702—2), which has since been repealed and superseded by the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1987, ch. 37, par. 801—1 *et seq.*). The petitions alleged that the respondent had committed 12 criminal acts. Pursuant to an agreement with the State, the respondent admitted that he had committed four of the criminal acts, and the State withdrew the charges relating to the others. The trial court issued a dispositional order committing the respondent to the juvenile division of the Department of Corrections (DOC). The respondent subsequently filed a motion to withdraw his admissions, but the trial court denied the motion. The respondent now appeals.

On appeal, the respondent advances two arguments. First, the respondent contends that the trial court lacked jurisdiction to enter the dispositional order because it had not made a specific finding that the minor was delinquent. Second, the respondent contends that the trial court abused its discretion by committing the respondent to the DOC

rather than placing him in a therapeutic residential setting. Since the respondent was charged under the statutory predecessor of the Juvenile Court Act of 1987, we will examine this cause according to the terms of the older law.

The respondent was born on September 27, 1971. The record indicates that, before the instant petitions were filed, the State filed an initial petition against the respondent in 1986. That petition, pursuant to which the respondent was placed under court supervision, is not relevant here. The State subsequently filed the two petitions at issue here on March 17, 1988. The second petition (case No. 88—J—203) alleged that the respondent had committed four acts of residential burglary (Ill. Rev. Stat. 1985, ch. 38, par. 19—3), one attempted residential burglary (Ill. Rev. Stat. 1985, ch. 38, pars. 8—4(a), 19—3), three acts of theft (Ill. Rev. Stat. 1985, ch. 38, par. 16—1(a)), and one act of criminal damage to property (Ill. Rev. Stat. 1985, ch. 38, par. 21—1(a)). The third petition (case No. 88—J—204) alleged that the respondent had committed one act of arson (Ill. Rev. Stat. 1985, ch. 38, par. 20—1(a)), one act of attempted arson (Ill. Rev. Stat. 1985, ch. 38, pars. 8—4(a), 20—1(a)), and two acts of criminal damage to property (Ill. Rev. Stat. 1985, ch. 38, par. 21—1(a)). These charges arose out of several incidents occurring between August 1987 and January 1988.

The State and the respondent ultimately reached an agreement whereby the respondent would admit to three acts of residential burglary as alleged in the second petition and one act of attempted arson as alleged in the third petition; in return, the State agreed to withdraw all other allegations of wrongdoing. This agreement was presented to the trial court on August 1, 1988. The trial court "accepted" the respondent's admissions, but it did not make any finding, either orally or in writing, pertaining to the respondent's guilt of the offenses charged or his delinquency pursuant to section 4—8 of the Act (Ill. Rev. Stat. 1985, ch. 37, par. 704—8).

A dispositional hearing was commenced on September 2, 1988. (See Ill. Rev. Stat. 1985, ch. 37, par. 705—1.) The court adjourned the hearing so that the respondent might be evaluated at the John J. Madden Mental Health Center (Madden). Madden subsequently issued a report stating that the respondent was "antisocial in nature" and concluding that "[o]ther than committment [sic] to the Department of Corrections, there do not appear to be any viable alternatives considering the serious nature of the charges against him."

When the dispositional hearing was resumed on September 23, 1988, the respondent's father presented a list of facilities, both in Illinois and out of the State, which he alleged might accept the respond-

ent despite his history of arson. The respondent asked that the dispositional hearing be continued so that the probation department could evaluate the list of facilities to determine if any might be appropriate for the respondent's residential placement. The trial court, however, decided that such a delay would be unwarranted. The trial judge stated that he knew that some of the facilities on the respondent's list would not, in fact, accept persons with an arson background. Kimberly Crawford, an officer with the Department of Probation and Court Services, also informed the court that "a majority" of the facilities on the respondent's list would not accept anyone with an arson background. Crawford recommended placement with the DOC. The court stated:

"THE COURT: In the mean time, [the respondent] has been sitting in the Youth Home. He's not getting any counseling sitting there. I'm going to send him to D.O.C. for a ninety day evaluation. They have facilities to evaluate people with his problems, and then they can send it [sic] back.

\* \* \*

But in the meantime, if, as most of the medical people say, D.O.C. is the best place for him, \* \* \* at least his treatment will have begun."

The written order of commitment was issued on September 23, 1988. The preprinted portion of the order of commitment noted that the order was issued with "the respondent minor having been previously adjudicated DELINQUENT and a Ward of the Court as noted by written order previously entered." The order then stated that the respondent would be committed to the juvenile division of the DOC. Subsequently, the respondent filed a motion to withdraw his admission, alleging that his rights under the Act were not knowingly and voluntarily waived. The trial court denied the motion on December 2, and the respondent now appeals.

The first argument the respondent raises on appeal is that the trial court was without jurisdiction to enter a dispositional order because it had not first found the respondent delinquent. The State maintains that the respondent has waived this argument for failure to present it to the trial court at the dispositional hearing or in the motion to withdraw his admissions. As we will proceed to discuss, however, the question presented here is one of whether the trial court properly had jurisdiction of this cause. If the issue is one of personal jurisdiction over the defendant, then the defendant waived any objection thereto by participating in these proceedings. (See *In re Greene* (1979), 76 Ill. 2d 204, 212.) If the question is one of the trial court's

subject matter jurisdiction, then the issue is not waived and can be broached for the first time on appeal. (*Lake Region Conference of Seventh-Day Adventists v. Ward* (1988), 170 Ill. App. 3d 999, 1006.) We must, then, address the substance of the respondent's jurisdictional argument concomitantly with the inquiry into whether it has been waived.

■ Although circuit courts have original jurisdiction over all justiciable matters, it is well settled that, when a court's power to act is controlled by statute, the court is governed by rules of limited jurisdiction. (*DeKing v. Urban Investment & Development Co.* (1987), 155 Ill. App. 3d 594, 596.) The Act provides a number of requirements which must be met for a circuit court to exercise its authority under the Act. It is not clear, however, that each one is jurisdictional in nature. Three of the Act's provisions are of interest here. These provisions relate to the process by which a minor is found to be delinquent, adjudicated a ward of the court, and subjected to a disposition authorized by the Act. See *In re N.W.* (1984), 125 Ill. App. 3d 367, 370.

■ An action against a minor under the Act is initiated by the filing of a petition alleging that the minor is "delinquent, addicted, requiring authoritative intervention, neglected or dependent, as the case may be." (Ill. Rev. Stat. 1985, ch. 37, par. 704—1(2).) Here, we are concerned only with the question of delinquency. A minor is delinquent if he or she has violated or has attempted to violate any Federal or State law or municipal ordinance before his or her 17th birthday. (Ill. Rev. Stat. 1985, ch. 37, par. 702—2.) After a petition alleging delinquency is filed, an adjudicatory hearing is held to determine whether the minor is, in fact, delinquent. (Ill. Rev. Stat. 1985, ch. 37, par. 704—6.) Section 4—8(1) of the Act requires that, after hearing evidence at the adjudicatory hearing, "the court shall make and note in the minutes of the proceedings a finding of whether or not the minor is" delinquent. (Ill. Rev. Stat. 1985, ch. 37, par. 704—8(1).) Once the court finds a minor to be delinquent, it must proceed to a dispositional hearing to determine whether it is in the best interests of the minor and the public that he or she be made a ward of the court. (Ill. Rev. Stat. 1985, ch. 37, par. 705—1(1).) After a delinquent minor is adjudicated a ward of the court, the court may then proceed to the entry of a dispositional order. See Ill. Rev. Stat. 1985, ch. 37, par. 705—2.

■ In *In re Tingle* (1977), 52 Ill. App. 3d 251, 257, the court held that the adjudication of wardship under the Act is not a jurisdictional requirement, but merely a procedural matter which cannot be raised

for the first time on appeal. (See also *In re Scott* (1978), 62 Ill. App. 3d 367, 368-69.) However, this court has held that a finding that a minor is delinquent is a jurisdictional prerequisite to an adjudication of wardship and a dispositional order. (*In re R.R.* (1987), 159 Ill. App. 3d 313, 319.) Indeed, we do not interpret the State's position on appeal to be to the contrary. Because a finding of delinquency is required to vest the court with jurisdiction for its subsequent proceedings under the Act, the respondent may now properly raise on appeal a claim that the court acted without jurisdiction even though the issue was not raised before the trial court.

The State argues that, although a finding of delinquency is a jurisdictional prerequisite to the dispositional order at issue here, such a finding is implicit in the record. Section 4—8(1) of the Act specifically requires that, following an adjudicatory hearing, the trial court "shall make and note in the minutes of the proceeding a finding of whether or not the minor is" delinquent. (Ill. Rev. Stat. 1985, ch. 37, par. 704—8(1).) It has been held that a finding of guilt of the underlying criminal offense made in open court and in a written order is sufficient to constitute a finding of delinquency. (*In re J.N.* (1982), 91 Ill. 2d 122, 128; see also *In re N.W.*, 125 Ill. App. 3d at 370.) Beyond this, however, neither our research nor that of the parties has produced any case in which a finding of delinquency has been implied without a specific articulation of such a finding or a similar finding of guilt.

We do not agree that a finding of delinquency can be implied from this record. It is insufficient for the State to point to the preprinted form on which the commitment order was entered to show that the minor had "been previously adjudicated DELINQUENT." The record of proceedings reveals that no such finding was made either when the court accepted the respondent's admissions or at the dispositional hearing. Moreover, although the commitment order recites that the supposed adjudication of delinquency had been "noted by written order previously entered," there is no written finding of guilt or delinquency contained in the record. The preprinted recitation is simply insufficient to cure this jurisdictional omission. We also reject the State's invitation to treat the written commitment order itself as a finding of delinquency, as there is no support whatsoever for such an inference in the report of proceedings.

The State further argues, however, that we can imply a finding of delinquency here because the respondent had admitted commission of the offenses for which the State sought to have him declared delinquent and because the court would not have proceeded to

disposition of the cause had it not found the respondent delinquent. A minor's admission is not the same as a court's finding of delinquency, and the admission does not suffice where no adjudication of delinquency has been made. (*In re R.R.*, 159 Ill. App. 3d at 319.) It is similarly insufficient to rely on the assumption that the trial court would not have proceeded to disposition of the cause had it not already found the respondent delinquent. Such a position would render meaningless the requirement that such a finding be made. An analogy can be drawn to the question of whether a trial court could sentence a criminal defendant without first entering a judgment of conviction. Under such circumstances, we might well imply that the trial court would not have proceeded to sentencing if it had not found the defendant guilty; nevertheless, the court would be without jurisdiction to sentence the defendant until a judgment of conviction was entered. *People v. Vaughn* (1981), 92 Ill. App. 3d 913, 915.

■ We conclude, therefore, that the trial court did not have jurisdiction to enter the dispositional order because it had not first explicitly found the respondent delinquent. The State contends that such a conclusion requires us to dismiss the appeal. We disagree. This court has previously held that, where the trial court has failed to enter a finding of delinquency, it is appropriate to remand the cause so that the trial court might determine whether the respondent was delinquent. (*In re R.R.*, 159 Ill. App. 3d at 320.) Our holding here makes it unnecessary to address the respondent's contention that the trial court abused its discretion in committing him to the DOC.

The judgment of the circuit court is reversed and the cause remanded for further proceedings.

Reversed and remanded.

UNVERZAGT, P.J., and WOODWARD, J., concur.