594 N.E.2d 433 (1992)
229 Ill. App.3d 569
171 Ill.Dec. 581
In re J.K., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. J.K., Respondent-Appellant).
No. 2-90-0780.
Appellate Court of Illinois, Second District.
June 12, 1992.
Rehearing Denied July 7, 1992.
*434 G. Joseph Weller, Deputy Defender, Kim M. DeWitt, Office of the State Appellate Defender, Elgin, for J.K., a Minor.
James E. Ryan, DuPage County State's Atty., Wheaton, William L. Browers, Deputy Director, State's Attys. Appellate Prosecutor, Elgin, for the People.
Justice WOODWARD delivered the opinion of the court:
Respondent, J.K., appeals the order of the circuit court committing him to the Department of Corrections. He contends that the trial court erred when it directed the State to file a petition to revoke his probation and that the trial court abused its discretion when it sentenced him to the Department of Corrections when there were less restrictive alternatives available.
These proceedings commenced when respondent's parents brought him to the Du Page sheriff's office to discuss the burglaries he committed; he had bragged about his misdeeds. The State filed a petition to adjudicate him a delinquent minor. He was initially detained in the youth home for 15 days. At the adjudicatory hearing on July 17, 1989, the day before his fourteenth birthday, he admitted to two counts of residential burglary and a count of theft. He remained at the youth home prior to the dispositional hearing. A psychological evaluation stated he had a severe antisocial personality formation; the interviewer recommended direct and intensive intervention. The Department of Probation and Court Services determined he had serious problems but deserved a chance to try to change.
At the dispositional hearing, on August 4, the State recommended residential placement. The court noted that burglary was a serious charge but that respondent had not previously been in the juvenile court system. The court placed respondent on two years' probation with residential placement to be reviewed every six months. The court ordered that respondent make restitution at the rate of 50% of his earnings at the program because the court thought it to be the best solution for respondent and for society. The court stated that if respondent did well, it would relax the restrictions and possibly release him to a home detention. The court warned him that the alternative to residential placement when more security is needed is a detention at the Department of Corrections. The court did not believe respondent should be sent there and hoped such a day would never arrive.
On February 1, 1990, the probation officer reported that respondent was doing fine and that residential placement was appropriate for him. She considered moving him to the extended-day program. He was doing well despite the disruption a change in personnel had caused. The two months he spent in the youth home had made a lasting impression on him.
*435 On March 30, the State filed supplemental petition No. I, a petition for a rule to show cause why respondent should not be held in contempt of court for violating the rules of probation. The State alleged respondent punched a chair and yelled at an extended-day staff member. Respondent admitted the petition, and the court found him in contempt. He was sentenced to 10 days' detention in the Du Page County Youth Home. The court stated that, from all the reports, respondent had been making a good effort and was doing well. For this reason, he had been made one of the pioneers at the extended-day program. However, the court warned him to maintain appropriate behavior as the court did not want to be asked to send him to a more restrictive program.
On May 29, 1990, the State filed supplemental petition No. II, a second petition for a rule to show cause. The State alleged that respondent violated the terms of his probation when he was terminated from the extended-day program for undermining the program and for not dealing directly with his problems. Respondent admitted that he had been terminated but that he was confused by the program. The probation officer explained that respondent had been given a second chance to prove that he could stay at the program but he failed his 30-day trial period for various acts such as threatening another person. The staff thought he was not owning up to his problems. The State sought a 30-day detention as a sanction for respondent's behavior, after which he would reapply for the extended-day program. The trial court entered the 30-day sanction and continued the cause for the probation officer to make a recommendation for continued placement in the extended-day program or any alternative. The court then stated that, at the original dispositional hearing, it gave serious consideration to a commitment to the Department of Corrections, but decided residential placement was the better alternative; it also stated that later it allowed the extended-day program as a relaxation of that placement.
On June 21, the cause came before the court for a new dispositional hearing. The court noted there was no new petition before it. The court stated:
"I'm not going to proceed on the disposition this morning. I'm now directing the State's Attorney's Office to file what I presume will be Supplemental No. Ill, a Petition to Revoke.
I believe at least one substantive paragraph will be the termination from the Aura Extended Day program. The matter warrants consideration on that basis."
On the State's request, the parties then went off the record for a moment. When they returned, the court repeated that "I'll have your office file the Petition to Revoke as promptly as may be." The court asked respondent's counsel only if he had any objection to the seven-day time frame, and counsel complained that he might not have enough time to get the petition, discuss it and do discovery before the hearing. When respondent's mother expressed confusion over the delay and the procedure, the court explained that respondent's failure to satisfy the program was serious and the court had to consider a placement with the Department of Corrections. The court stated that because it was uncertain whether it could make such an order without a petition to revoke probation, it "ordered" the State's Attorney's office to file the petition.
On June 26, 1990, the State filed supplemental petition No. Ill, a petition to revoke probation, in which it alleged that respondent willfully and contumaciously was suspended from the extended-day program on May 3, 1990, and was unsatisfactorily terminated from the program on May 22, 1990. Respondent admitted that he was suspended and terminated.
Respondent also expressed that he was confused about what was happening in court. While in the extended-day program, he was told he was doing well before he was suspended. He was told to express his feelings, and when he told a staff member that sometimes he felt like wringing her skinny little neck, he was rebuked. He was removed from the previous residential program because he was doing well, not *436 poorly. The probation officer was discussing placing him at three different residential programs. Respondent could not understand why he was being considered for the Department of Corrections when he was trying so hard and had really changed.
The State recommended commitment to the Department of Corrections. The trial court noted the unusual number of reports filed in the cause and stated it had read and reread every one. The records contained mainly vague references in psychological jargon to his behavior or alleged lack of cooperation; however, there were also a few concrete examples of instances where respondent took a cassette tape, mimicked gang symbols, refused to attend school, intimidated other students, committed horseplay, broke pencils during class and failed to complete a math assignment. The court stated that it was ruling out the possibility of residential placement because there was insufficient evidence that the effort would succeed. Respondent had been terminated because of his conduct, not his misunderstanding of the program. Respondent was not emotionally capable of being released to a home placement or similar program. The court saw no other alternative to the Department of Corrections and revoked his probation. Respondent appeals.
Respondent first argues that the trial court improperly ordered the State to file the petition to revoke probation. Although respondent's trial counsel failed to object to the order, respondent asks us to consider the matter as one of plain error or of the ineffective assistance of trial counsel, who failed to object. Respondent argues that he was denied a fair dispositional hearing and denied substantial rights because the commitment to the Department of Correction is for an indefinite term. Ill.Rev.Stat. 1989, ch. 37, par. 805-33(b).
The plain error doctrine permits courts of review to take notice of plain errors and defects affecting substantial rights in instances where the evidence is closely balanced or where the error affected the fundamental fairness of the proceeding. (People v. Hope (1990), 137 Ill.2d 430, 475, 148 Ill.Dec. 252, 560 N.E.2d 849.) Respondent claims that the trial court's initiation of the revocation proceedings placed it in the role of the prosecutor and destroyed its ability to remain objective and impartial. Where the court sets into motion a revocation proceeding, it should not rule on the proceeding because it is impossible to be impartial. (People v. Pifer (1979), 80 Ill.App.3d 24, 27, 35 Ill.Dec. 476, 399 N.E.2d 310.) The duty of impartiality applies to revocation of probation proceedings. (People v. Bullard (1977), 52 Ill. App.3d 712, 717, 10 Ill.Dec. 408, 367 N.E.2d 1017.) Respondents in juvenile proceedings are entitled to the due process of law. (In re S.R.H. (1983), 96 Ill.2d 138, 144, 70 Ill.Dec. 255, 449 N.E.2d 129; In re J.C. (1987), 163 Ill.App.3d 877, 891, 114 Ill.Dec. 932, 516 N.E.2d 1326.) Because a defendant has a right to an impartial tribunal and the court has a duty to avoid the appearance of impropriety, the waiver rule may be relaxed. People v. Austin (1983), 116 Ill.App.3d 95, 101, 71 Ill.Dec. 625, 451 N.E.2d 593.
We first note that the circuit court could not revoke probation without a petition to revoke probation being filed. (In re R.R. (1978), 64 Ill.App.3d 818, 819, 21 Ill. Dec. 643, 381 N.E.2d 1187; see In re D.P. (1988), 165 Ill.App.3d 346, 347-48, 116 Ill. Dec. 442, 519 N.E.2d 32.) A court is without authority to revoke a minor's probation when there is no timely filed petition. (R.R., 64 Ill.App.3d at 819, 116 Ill.Dec. 442, 519 N.E.2d 32.) Section 5-25 of the Juvenile Court Act of 1987 (Ill.Rev.Stat.1989, ch. 37, par. 805-25) authorizes the court to revoke probation if a petition is filed. The order of a court exceeding its authority is void. (People v. Wade (1987), 116 Ill.2d 1, 5-7, 107 Ill.Dec. 63, 506 N.E.2d 954; In re J.S.L. (1990), 197 Ill.App.3d 148, 152-54, 143 Ill.Dec. 149, 553 N.E.2d 1135.) Thus, the circuit court was correct when it stated that it could not revoke probation or commit respondent to the Department of Corrections before the State filed a petition to revoke probation.
However, the trial court had no authority to order the State's Attorney's office to file the petition to revoke. Besides violating impartiality (Pifer, 80 Ill. App.3d at 27, 35 Ill.Dec. 476, 399 N.E.2d 310), the court's directive violated the principle *437 of separation of powers between the executive and judicial branches of the government (People v. Dinger (1988), 177 Ill.App.3d 174, 176, 126 Ill.Dec. 515, 531 N.E.2d 1142, aff'd in part (1990), 136 Ill.2d 248, 254-55, 144 Ill.Dec. 88, 554 N.E.2d 1376). Only the prosecutor may initiate the proceeding. (136 Ill.2d at 255-56, 144 Ill. Dec. 88, 554 N.E.2d 1376; see Ill.Rev.Stat. 1989, ch. 34, par. 3-9001 (powers of State's Attorney).) The trial judge cannot assume the role of the prosecutor and determine which criminal offenses shall be charged, and the court has no authority to direct that the charging instrument be filed. People ex rel. Daley v. Moran (1983), 94 Ill.2d 41, 46, 67 Ill.Dec. 790, 445 N.E.2d 270.
The State cites People v. Jimenez (1989), 191 Ill.App.3d 13, 27, 138 Ill.Dec. 449, 547 N.E.2d 616, as an example where the trial court ordered charges be filed against a defendant. However, in Jimenez, an incident occurred off the record which caused the trial judge to order the prosecutors to file charges. The appellate court affirmed the denial of the defendant's motion for substitution of judges. The court could not allow a defendant to obtain a substitution based on an incident created by his own misconduct because such a rule would provoke intentional misconduct. By contrast, respondent committed no act against his trial judge. There was no counter-vailing public policy dictating that respondent should not obtain a substitution of judges.
Thus, the trial court committed plain error of constitutional proportions when it ordered that the State file a petition to revoke probation. The court's position affected the fundamental fairness of the proceeding. The error was prejudicial because respondent could not have been committed to the Department of Corrections without the filing of the petition. Prior to the hearing, the assistant State's Attorney had stated that the proposed disposition would be a reapplication to the extended-day program or a different program of residential placement. The parties and witnesses were ready for a disposition based on the pleadings then before the court. Not until the trial court continued the proceedings and directed the State to file the petition did the State request commitment. The other placement alternatives, mentioned by respondent, were no longer discussed, and the trial court did not consider them. See Ill.Rev.Stat.1989, ch. 37, par. 805-29; In re B.S. (1989), 192 Ill.App.3d 886, 891, 140 Ill.Dec. 44, 549 N.E.2d 695.
While the adversary nature of the proceedings does not relieve the trial judge of the obligation of raising on his own initiative, at appropriate times and in an appropriate manner, matters which may significantly promote a just determination of the trial (ABA Standards Relating to Criminal Justice, the Function of the Trial Judge § 1.1(a) (1974)), the record shows the judge went beyond the suggestion of a procedure which he deemed expeditious when he ordered the prosecutor to do something beyond the judge's control. We recognize that trial judges often increase the fairness of trials and of the administration of justice by making suggestions to trial counsel. However, the trial court may not order discretionary acts by the prosecutor.
Because we determine that the trial court improperly ordered the State to file the petition, we do not reach respondent's second issue whether it abused its discretion in committing him to the Department of Corrections. In any event, because a further dispositional hearing must be conducted regarding supplemental petition No. II, we remand the cause for said hearing. Because of the nature of the error, the dispositional hearing should be conducted before a different judge. See Austin, 116 Ill.App.3d at 101, 71 Ill.Dec. 625, 451 N.E.2d 593.
For the above reasons, the order of the circuit court committing respondent to the Department of Corrections is vacated, and the cause is remanded for further proceedings.
Reversed and remanded.
UNVERZAGT and McLAREN, JJ., concur.