Third Division
March 19, 1997


No. 1-96-2214

THE PEOPLE OF THE STATE OF )
ILLINOIS, )
 ) APPEAL FROM THE CIRCUIT
 Respondent-Appellee, ) COURT OF COOK COUNTY.
 )
 v. )
 ) HONORABLE WILLIAM HIBLER,
D.T., a minor, ) CATHERINE HABERKORN,
 ) JUDGES PRESIDING.
 Petitioner-Appellant. )

 
 JUSTICE GORDON DELIVERED THE OPINION OF THE COURT:

 D.T., a minor, was taken into custody on April 5, 1996 for
possession of a controlled substance. He was released from
temporary custody that day and appeared at all subsequent court
dates. On June 21, 1996, after hearing testimony from D.T.'s
probation officer, Judge Haberkorn ordered that D.T. be
temporarily detained and set his adjudicatory hearing for July 3,
1996. D.T. thereupon filed an emergency petition for writ of
habeas corpus. That petition was heard and denied on June 25,
1996 by Judge Hibler, presiding judge of the juvenile division of
the circuit court.
 D.T. appeals from the denial of his emergency petition for
writ of habeas corpus arguing that his petition should have been
granted because his detention was not authorized by any provision
of the Juvenile Court Act of 1987 (the Juvenile Court Act) (705
ILCS 405/1-1 et seq. (West 1994)) and because he was denied due
process.
 Before reaching the merits of D.T.'s argument, we must first
determine whether this appeal has been rendered moot by the fact
D.T. was the subject of an adjudicatory hearing and is no longer
in custody. As a general rule, a court of review will dismiss
an appeal when it has notice of facts which show that only moot
questions or mere abstract propositions are involved or where the
substantial questions involved in the trial court no longer
exist. People ex rel. Wallace v. Labrenz, 411 Ill. 618, 104
N.E.2d 769 (1952). See In re E.G., 133 Ill. 2d 98, 549 N.E.2d
322 (1989) (a case is moot where no present controversy exists);
Sharma v. Zollar, 265 Ill. App. 3d 1022, 638 N.E.2d 736 (1994)
(an issue is moot where events occur which make it impossible for
the court to grant effectual relief). Under a well-recognized
exception to that rule, a case which has become moot will not be
dismissed upon appeal where a substantial public interest exists. 
In determining whether such an interest exists, the courts
consider, inter alia, three criteria: whether the question is
public in nature; whether it is desirable to make an
authoritative determination of a question for the guidance of
public officials; and whether the question is likely to recur. 
In re E.G., 133 Ill. 2d 98, 549 N.E.2d 322; Labrenz, 411 Ill. at
623, 104 N.E.2d at 772; In re A.F., 234 Ill. App. 3d 1010, 602
N.E.2d 480 (1991). See People v. Bailey, 116 Ill. App. 3d 259,
452 N.E.2d 28 (1983) (public issue exception met where inherent
ambiguity in statutory sentencing scheme likely to recur).
 Here, as D.T. is no longer in custody, his habeas corpus
petition has become moot. In re A.F., 234 Ill. App. 3d 1010, 602
N.E.2d 480. We find, though, that this case presents an issue of
substantial public interest, the juvenile court judge's authority
to initiate a temporary detention hearing for a minor who was
released after being taken into custody and who was awaiting an
adjudicatory hearing. See People v Clayborn, 90 Ill. App. 3d
1047, 1052, 414 N.E.2d 157, 161 (1980) ("[t]he detention of a
juvenile is a matter of public concern and an authoritative
determination of the issue will guide public officials and
juvenile court judges who are likely to face the problem in the
future"). That issue is likely to recur with respect to other
minors; and, due to the time constraints of the Juvenile Court
Act, generally will become moot before review can be obtained. 
See In re E.G., 133 Ill. 2d 98, 549 N.E.2d 322; In re A.F., 234
Ill. App. 3d 1010, 602 N.E.2d 480; Bailey, 116 Ill. App. 3d 259,
452 N.E.2d 28. Under these circumstances, the requisite degree
of public interest exists; and we will not dismiss this appeal on
the basis of mootness.
 The facts concerning D.T.'s temporary detention are as
follows. On April 5, 1996, D.T. was taken into custody by a law
enforcement officer for possession of a controlled substance. A
delinquency petition was filed and D.T. was given a court date of
April 25, 1996 and released. On June 21, 1996, D.T.'s third
court date, D.T.; his aunt, who was his guardian; and a probation
officer, Yolanda Dixon, appeared before Judge Haberkorn. Dixon,
who previously had been ordered by the judge to prepare a
"pretrial social," reported that D.T. had been abandoned by his
mother; was living with his aunt; and was a ward of the
Department of Children and Family Services. She next stated that 
D.T. had not attended school the previous year and that during
the current year he refused to stay in his classroom; often
walked the school halls; was uncooperative; and was disrespectful
to his teacher. Dixon stated that D.T. took $40 of his aunt's
rent money. (D.T. admitted that he took the $40 to buy a
bicycle.) She stated that D.T. returns home "any time he
pleases"; that he once attended a gang leader's birthday party
that began at 2:00 or 3:00 a.m.; that D.T.'s aunt had to search
for him on the morning of the hearing and eventually found him in
an "after-hours club"; and that D.T. admits to being a gang
member.
 After hearing from the probation officer, Judge Haberkorn
was advised by the Assistant State's Attorney that the police
officer who had taken D.T. into custody had been present in court
and that she had released him when D.T.'s counsel indicated that
he would be requesting a continuance. Although the judge granted
D.T.'s request for a continuance, she stated that D.T.'s conduct
was "outrageous" and that he would be held. After defense
counsel objected, the judge ordered that the case be held over so
that the police officer and case worker could be contacted and
ordered to appear.
 When the case was recalled that afternoon, the judge
indicated that the police officer who apprehended D.T. would be
testifying by speaker phone. Based upon that officer's
testimony, Judge Haberkorn made a finding of probable cause. 
Defense counsel objected to the proceeding and to the telephonic
questioning of the officer. Thereafter, the State argued that
D.T. should be detained based upon the report of D.T.'s probation
officer which showed that D.T. was out of control. Defense
counsel again objected to the proceeding. Finding that D.T.'s
detention was a matter of urgent and immediate necessity, the
judge ordered that D.T. be detained and set his adjudicatory
hearing for July 3, 1996.
 D.T.'s counsel thereupon filed a petition for writ of habeas
corpus seeking D.T.'s immediate release. The petition argued
that the court was without authority to take D.T. into custody on
June 21, 1996. On June 23, 1996, Judge Hibler denied the
petition finding that Judge Haberkorn had authority to protect
D.T. and the public after being presented with evidence showing
that D.T was beyond the control of his aunt. He also held that
the finding of probable cause was not improper despite the fact
that the police officer's testimony was given by telephone since
defense counsel was afforded an opportunity to and did cross-
examine him.
 The purpose of the Juvenile Court Act of 1987 (the Juvenile
Court Act) (705 ILCS 405/1-1 et seq. (West 1994)) is to provide
care and guidance to minors, preferably in their own homes, as
will serve their moral, emotional, mental and physical welfare
and the best interests of the community. 705 ILCS 405/1-2 (West
1994); People v. Clayborn, 90 Ill. App. 3d 1047, 414 N.E.2d 157
(1980). The Juvenile Court Act is a comprehensive statutory
scheme that creates and defines the powers of the juvenile court. 
As stated in In re M.M., 156 Ill. 2d 53, 65-66, 619 N.E.2d 702,
710 (1993):
 "When a court's power to act is controlled by statute,
 the court is governed by the rules of limited
 jurisdiction [citation] and courts exercising
 jurisdiction over such matters must proceed within the
 strictures of the statute [citation]."
 See People v. Woodruff, 88 Ill. 2d 10, 14, 430 N.E.2d 1120, 1122
(1981) ("[t]he Juvenile Court Act severely limits the authority
[of the court] to hold a minor in custody"); In re J.S.L., 197
Ill. App. 3d 148, 553 N.E.2d 1135 (1990) (stating that when a
court's power to act is controlled by statute, the court is
governed by rules of limited jurisdiction).
 The instant appeal concerns the juvenile court's power to
order the temporary detention of a minor alleged to be
delinquent. That power is created and defined by sections 5-5
through 5-10 of the Juvenile Court Act. 705 ILCS 405/5-1 through
5-10 (West 1994, West Supp. 1995). Those provisions establish an
orderly scheme for taking the minor into custody and for
retaining the minor in custody while he awaits an adjudicatory
hearing. They set forth how the minor is taken into custody, who
may take the minor into custody, who files the delinquency
petition and when that petition must be filed, what criteria must
be met in order to retain the minor in temporary detention while
awaiting an adjudicatory hearing, who determines whether the
minor will be retained in detention, and when the minor is
entitled to a detention hearing.
 The Juvenile Court Act creates two divergent methods for
taking the minor into custody and for retaining him in temporary
custody thereafter. One method provides for the taking of the
minor into custody under warrant. 705 ILCS 405/5-5(2) (West
1994). The process by which the minor is taken into custody
under warrant is initiated by the filing of a verified petition
by any adult person, agency or association wherein facts of
delinquency are alleged. 705 ILCS 405/5-5(2), 5-13. If after
the filing of that petition the court finds that the conduct of
the minor may endanger the health, person, welfare, or property
of himself or others or that the circumstances of his home
environment may endanger his health, person, welfare or property,
the court will issue a warrant. 705 ILCS 405/5-5(2) (West 1994). 
A law enforcement officer will serve the warrant, take the minor
into custody and deliver the minor to the nearest juvenile police
officer who must transport the minor, without delay, to the court
or place designated for the reception of minors. 705 ILCS 405/5-
5(2), 5-6(1) (West 1994).
 A second method allows for the taking of the minor into
custody without a warrant. 705 ILCS 405/5-5(1) (West 1994). 
That process is initiated when a law enforcement officer takes
the minor into custody based upon a reasonable belief that the
minor is delinquent. 705 ILCS 405/5-5(1) (West 1994). Unless
the officer releases the minor, he must, without unnecessary
delay, surrender the minor to the nearest juvenile police
officer. 705 ILCS 405/5-6(2) (West 1994). Thereafter, the
juvenile police officer is authorized to take one of several
statutorily enumerated actions which include releasing the minor
or keeping the minor in custody. 705 ILCS 405/5-6(3)(h), (i)
(West 1994). If the juvenile police officer reasonably believes
that there is an urgent and immediate necessity to keep the minor
in custody, based upon the statutory factors listed in section 5-
6(4), he is required to deliver the minor to court or to the
place designated by rule or order of court for the reception of
minors. 705 ILCS 405/5-6(3)(i) (West 1994).
 When the minor is delivered to court or to the place
designated by the court, a probation officer or other public
officer designated by the court must pursue an investigation. 
705 ILCS 405/5-8 (West 1994). That officer must immediately
release the minor to his parent or guardian unless he or she
determines that the minor is likely to flee or that further
detention is a matter of urgent necessity for the protection of
the minor or of the person or property of another. 705 ILCS
405/5-8 (West 1994). If the probation or other court-designated
public officer determines that the minor should be retained in
custody, he or she "shall cause a verified petition of
delinquency to be filed." 705 ILCS 405/5-9(b) (West 1994). That
petition must allege various matters, including facts
establishing the delinquency charge and the date set for the
detention or shelter care hearing. 705 ILCS 405/5-13(2) (West
1994). After that petition has been filed the clerk of the court
will set the matter for a detention hearing. 704 ILCS 405/5-9(b)
(West 1994). Section 5-9 of the Juvenile Court Act mandates that
if the minor is not brought to court for a detention hearing
before the expiration of 36 hours from the time the minor was
taken into temporary custody, he must be released. 705 ILCS
405/5-9 (West 1994); People v. Clayborn, 90 Ill. App. 3d 1047,
414 N.E.2d 157 (1980). 
 At the detention hearing, the court must determine whether
there is probable cause to believe the minor is delinquent and
whether it is a matter of immediate and urgent necessity for the
protection of the minor or of the person or property of another
that the minor be detained or placed in shelter care or that the
minor is likely to flee the jurisdiction of the court. 705 ILCS
405/5-10(1), (2) (West Supp. 1995). If, however, the court finds
that the minor was not brought before it within the time period
specified in section 5-9, it must release the minor. 705 ILCS
405/5-10(6) (West Supp. 1995).
 The facts in the instant case show that D.T. was taken into
custody by a police officer without a warrant on April 5, 1996. 
See 705 ILCS 405/5-5(1) (West 1994). No finding was made on that
day either by a juvenile police officer or a probation officer
that there was an urgent and immediate necessity to keep D.T. in
custody. See 705 ILCS 405/5-6(3)(i), 5-8 (West 1994). Instead,
a delinquency petition was filed and D.T. was given a court date
and released. On June 21, 1996, D.T.'s third court date on the
pending delinquency petition, D.T.'s probation officer presented
a "pretrial social" report. Based upon that report the judge, on
that date, sua sponte initiated a detention hearing. She then
ordered D.T.'s detention and set his adjudication hearing for
July 3, 1996.
 D.T. first argues that the juvenile court judge was without
authority to order and hold a detention hearing on June 21, 1996,
since the hearing came more than 36 hours after he was taken into
custody on April 5. Secondly, he argues that in accordance with
sections 5-5 through 5-10 of the Juvenile Court Act, detention
hearings are not authorized after the minor has been released
from custody regardless of the time which elapsed from the time
he was taken into custody. Lastly, he argues that he was denied
due process because no "petition for detention hearing" was ever
filed; because no notice of the detention hearing was provided;
and because no testimony was taken at the detention hearing held
on the afternoon of June 21, 1996 on the issue of urgent and
immediate necessity.
 D.T. relies on People v. Clayborn, 90 Ill. App. 3d 1047, 414
N.E.2d 157 (1980) in support of his first contention that his
detention hearing was unauthorized because more than 36 hours
elapsed since he was taken into custody. In Clayborn, the minor
was taken into custody and retained in custody for a period of
time beyond the statutory limit of 36 hours. The court held that
the failure to hold a detention hearing within the 36-hour time
limit required the minor's release. The court further held that
a detention hearing could not be held after the minor was
released. In that regard the court stated:
 "The Act nowhere authorizes a detention hearing after
 the 36-hour limitation has expired. Section 3-5(4)
 [now at 705 ILCS 405/5-9(3) (West 1994)] *** mandates a
 maximum period of time that a minor may be held in
 custody pending judicial action. [Citation.] To adopt
 the former interpretation [that a delayed hearing can
 be held after the minor's release] would be to increase
 the amount of overall time a minor spends in custody
 while awaiting adjudication and disposition of the
 petition of wardship. The latter interpretation [that
 the juvenile cannot be held in custody at all prior to
 the adjudicatory hearing after the 36-hour violation]
 encourages the State to make up for the delay in
 holding a detention hearing. If the State wishes to
 keep the minor off the street, it will schedule the
 adjudicatory hearing at the earliest possible moment,
 thus vitiating the earlier delay in holding a detention
 hearing. The statutory policy favoring prompt juvenile
 proceedings is served by construing section 3-5(4) to
 ban any further detention after a violation of the 36-
 hour period of section 3-5(1)." (Emphasis added.) 
 Clayborn, 90 Ill. App. 3d at 1051-52, 414 N.E.2d at
 161.
 Clayborn, however, is distinguishable from the facts of the
instant case because Clayborn dealt with the situation where the
minor was taken into custody and retained for a period longer
than 36 hours before being brought before a judicial officer for
a detention hearing. Here, D.T. was taken into custody and
released shortly thereafter. The detention hearing held on June
21, 1996 was not held to determine whether D.T. should have been
"further held in custody" (emphasis added) (705 ILCS 405/5-9(1)
(West 1996)), but, rather, was held for the purpose of
determining whether D.T. should have been held in custody as of
June 21, 1996, more than two months after he was taken into
custody by the police and released.
 Notwithstanding Clayborn's inapplicability, we nevertheless
find that D.T.'s second argument has merit in that once D.T. was
released from custody, the trial court was without authority to 
hold a detention hearing regardless of the time which may have
elapsed since the time he originally was taken into custody. 
Support for this conclusion comes from the plain language of the
statute. See People v. Hicks, 164 Ill. 2d 218, 647 N.E.2d 257
(1995) (a preeminent role of statutory construction is to give
effect to the language and intent of the legislature); People v.
Lewis, 158 Ill. 2d 386, 634 N.E.2d 717 (1994) (a primary rule of
statutory construction is to ascertain and give effect to the
intention of the legislature as evidenced by reading the statute
as a whole and considering all relevant parts). As discussed
above, sections 5-5 through 5-10 of the Juvenile Court Act
provide systematic and alternative procedures for the taking and
retaining of a minor into custody. The initial taking into
custody can occur with or without a warrant. When that taking
occurs under warrant, the court makes the "urgent and immediate
necessity" determination before the minor is taken into custody. 
705 ILCS 405/5-5(2) (West 1994) (a warrant may be issued when the
court finds that "the conduct and behavior of the minor may
endanger the health, person, welfare, or property of himself or
others or that the circumstances of his home environment may
endanger his health, person, welfare or property"). One would
therefore surmise that no detention hearing is required
thereafter because the holding of such a hearing would result in
an unnecessary duplication of court effort. 
 When, as here, the minor is taken into custody without a
warrant, the initial determinations to take the minor into
custody and to further detain him or her are made by persons
other than the juvenile court judge. Under the Juvenile Court
Act, those decisions are made by the law enforcement officer (705
ILCS 405/5-5(1), 5-6(2) (West 1994)), the juvenile police officer
(705 ILCS 405/5-6(3)(i) (West 1994)) and/or the probation officer
(705 ILCS 405/5-8 (West 1994)). When those individuals have not
released the minor, section 5-9 of the Act provides that a
detention hearing must be held within 36 hours to determine
whether the minor "shall be further held in custody." 705 ILCS
405/5-9(1) (West 1994). 
 If the minor has been released by the law enforcement
officer (705 ILCS 405/5-6(2) (West 1994)), by the juvenile police
officer (705 ILCS 405/5-6(3)(h) (West 1994)) or by the probation
officer (705 ILCS 405/5-8 (West 1994)), the procedures
established by sections 5-9 for the scheduling of a detention
hearing are no longer applicable because there is no pending
custody and because the need to hold a detention hearing is
mooted by the minor's release. Section 5-9 provides:
 "Setting of detention or shelter care hearing;
 notice; release. (1) Unless sooner released, a minor
 alleged to be a delinquent minor taken into temporary
 custody must be brought before a judicial officer within 36
 hours, exclusive of Saturdays, Sundays and court-designated
 holidays, for a detention or shelter care hearing to
 determine whether he shall be further held in custody.
 (2) If the probation officer (or such other public
 officer designated by the court in a county having more than
 3 million inhabitants) determines that the minor should be
 retained in custody, he shall cause a petition to be filed
 as provided in Section 5-13 of this Act, and the clerk of
 the court shall set the matter for hearing on the detention
 or shelter care hearing calendar. When a parent, guardian,
 custodian or responsible relative is present and so
 requests, the detention or shelter care hearing shall be 
 held immediately if the court is in session, otherwise at
 the earliest feasible time. The probation officer (or such
 other public officer designated by the court in a country
 having more than 3 million inhabitants) shall notify the
 minor's parent, guardian, custodian or responsible relative
 of the time and place of the hearing. The notice may be
 given orally.

 (3) The minor must be released from custody at the
 expiration of the 36 hour period specified by this Section
 if not brought before a judicial officer within that 
 period." (Emphasis added.) 705 ILCS 405/5-9 (West 1994).
As is apparent from its face, subsection 5-9(1), which provides
for the setting of a detention hearing, is specifically directed
toward minors already in custody. Under its provisions, a
juvenile once in custody and not "sooner released" can be
"further held in custody" pursuant to a detention hearing. 
Section 5-9 does not provide for a detention hearing with respect
to a juvenile who in fact has been "sooner released" and for whom
a detention hearing would not therefore be determinative as to
whether he should be held in further custody. With respect to a
minor previously released, a subsequent detention hearing would
determine whether he should be placed in custody in the first
instance rather than "further held in custody." 
 Thus, once a minor has been released either by the law
enforcement officer (705 ILCS 405/5-6(2) (West 1994)), by the
juvenile police officer (705 ILCS 405/5-6(3) (West 1994)) or by
the probation officer (705 ILCS 405/5-8 (West 1994)), there is no
enabling provision in the Act which would then authorize a
detention hearing by the court. There is no provision within the
statutory scheme established by sections 5-5 through 5-10 of the
Act whereby the court can review the decision made by the law
enforcement officer, the juvenile police officer or the probation
officer to release the minor who has been taken into custody
without a warrant. Furthermore, aside from the provision of
section 5-9 which is directed at the initiation of a detention
hearing for minors already in custody, there is no other
provision under the Act with respect to delinquent minors which
would authorize the court to initiate a detention hearing after
the minor has been released. 
 Absent the existence of such statutory provisions, the court
cannot empower itself to do that which it is not authorized to
do. See In re M.M., 156 Ill. 2d 53, 65-66, 619 N.E.2d 702, 710
(1993) ("[w]hen a court's power to act is controlled by statute,
the *** courts exercising jurisdiction over such matters must
proceed within the strictures of the statute"); In re J.S.L., 197
Ill. App. 3d 148, 553 N.E.2d 1135 (1990) (stating when a court's
power to act is controlled by statute, the court is governed by
rules of limited jurisdiction). Here the judicial decision to
detain D.T. did not occur within either of the statutory schemes
that allowed for the detention of a minor. D.T. was not taken
into custody under warrant, and thus the procedures set forth in
sections 5-5(2) and 5-6(1) were inapplicable. While D.T. was
taken into custody without a warrant, he was released from
custody shortly thereafter. The decision to release D.T. from
further detention terminated the detention process established in
sections 5-5(1), 5-6(3)(i), 5-8, 5-9 and 5-10 of the Juvenile
Court Act. As a result, the court was without authority to
consider the issue of D.T.'s detention on June 21, 1996 based
upon the delinquency petition filed in April. While it would
appear that the trial court could have initiated a new detention
process by ordering D.T.'s detention under warrant in accordance
with section 5-(2) of the Juvenile Court Act, that was not done.
 In view of our holding that the court was without authority
to order and hold a detention hearing on June 21, 1996, we need
not reach D.T.'s due process of law argument regarding lack of
notice and insufficient evidence.
 Reversed.